Robinson, J.
 

 The plaintiff in error here, Joseph Pavilonis, was defendant below. The action was for personal injury received in an automobile accident. The defendant in error, Joseph Valentine, recovered a judgment in the trial court, which was affirmed by the Court of Appeals.
 

 In impaneling the jury, counsel for defendant in error, upon the
 
 voir dire
 
 examination of the prospective jurors, aslced the questions: “Are any of you members on the jury employed by any casualty insurance company that writes automobile liability insurance? Are any of you owners of stock in any liability insurance company? * * * Are any of your relatives or close personal friends connected with as an employee or in any employment with any insurance company that writes automobile liability insurance?”
 

 As vacancies in the panel were filled by new jurors, the same or similar questions were repeated. The plaintiff in error objected at the time to each of the questions propounded, took exceptions to the ruling of the court, and properly saved his question throughout the trial.
 

 The sole question here is whether the propounding of such questions and the overruling of the objections thereto constituted prejudicial error and require a reversal of the judgments below.
 

 It is argued by the plaintiff in error that the effect, if not the purpose, of such inquiry, was to lead the jury to believe that a casualty insurance company was interested in the result of the trial,
 
 *156
 
 and that any judgment rendered against the plaintiff in error would be paid in part or in whole by such casualty insurance company, and that, because of such belief, the jury finally selected probably did, in disregard of the law and the evidence, return a verdict for the plaintiff below, defendant in error here.
 

 It is argued by the defendant in error here that, since a casualty insurance company was actually conducting the defense of the plaintiff in error, with its counsel and investigators present at the trial table, and was active in endeavoring to prevent a verdict against the plaintiff in error, and was, in fact, directly interested in the verdict, he had the same right to inquire of the jurors as to their interest in, connection with, or relation to, such casualty insurance company as he had to inquire of their interest in, connection with, or relation to, the plaintiff in error; that, since the jurors were unknown to him, it was the only way in which he could be assured of a fair and impartial jury; and that, unless he was diligent in such inquiry, he would have been deemed in law to have waived any objection he might have had to any juror interested, directly or otherwise, in such casualty insurance company.
 

 The purpose of the
 
 voir dire
 
 examination of a prospective juror is to determine whether he has the statutory qualification of a juror, and, having the statutory qualification, whether there exists any reason why, although qualified generally, he may be disqualified to sit in the particular case on trial.
 

 With reference to the statutory qualifications, they are the same in every case, and the questions that may and should be propounded to the prospec
 
 *157
 
 tive juror in reference thereto have become standard, and but little, if any, discretion is lodged in the trial court as to the character and scope of such questions. With reference to the qualification or disqualification of a prospective juror to serve in the trial of a given case, the questions that may be propounded necessarily vary with the varying issues, circumstances, and parties, as such issues, circumstances, and parties may operate to influence or bias particular jurors, as distinguished from jurors generally. Because of the great variety of such influences, the character and scope of the questions that may be propounded necessarily cannot become standard, but must be controlled by the court in the exercise of a sound discretion, the court having for its purpose the securing to every litigant an unbiased jury. In the exercise of such discretion it is the duty of the court to prevent an abuse of the privilege, but a court may not so exercise its discretion as to deny to litigants the right to ascertain from the juror on his
 
 voir dire
 
 examination whether he is interested, directly or indirectly, in the result of the litigation, or whether for any reason he is prejudiced or biased in favor of or against either litigant.
 

 In practice, parties at the trial are confronted with jurors whom they have never seen, of whom they have never heard, and of whom they must learn upon the
 
 voir dire
 
 examination such pertinent facts and history as will enable them to form a conclusion whether they can or cannot expect from the so-examined juror a fair and impartial trial.
 

 By statute each party is afforded the right to challenge for cause, and to challenge peremptorily, by the exercise of which right he can prevent an objec
 
 *158
 
 tionable juror from sitting in the trial. Of course, before a challenge for cause can be sustained, the existence of the cause must be developed from the prospective juror himself upon his
 
 voir dire
 
 examination. No amount of secret service investigation of the juror prior to his being called to the panel would be effective to support a challenge for cause if the right to develop the facts and history from the juror himself upon his
 
 voir dire
 
 examination were denied.
 

 With reference to the peremptory challenge, it may be exercised for no reason at all; but it will not be presumed that the Legislature, when it afforded the right to a litigant to peremptorily challenge a juror, contemplated that that was the only way he would be expected to exercise such challenge, but rather that he would be expected to exercise such challenge intelligently. To permit him to exercise such challenge intelligently requires, that he be permitted to extend his inquiry beyond the subjects which constitute ground for challenge for cause, and, since the history of the juror might affect his relationship to one case and not to another, the character of such inquiry will be governed by the peculiar facts of each case, and the extent of the inquiry must necessarily be within the sound discretion of the court.
 

 The inquiries in the instant case related to a subject pertinent to the issue involved in every
 
 voir dire
 
 examination of a juror, the issue of interest or bias. Some of the inquiries if answered in the affirmative would have supported a challenge for cause, and any of the inquiries if answered in the affirmative would have aided the litigants in deter
 
 *159
 
 mining whether they ought to exercise a peremptory challenge.
 

 However it is urged that by reason of such inquiries the accepted jurors inferred that a casualty insurance company was interested in the result of the trial, and that, therefore, by reason of such inference, the accepted jurors were biased against the casualty insurance company and the insured, and an unfair and partial trial resulted.
 

 The statement of the proposition at once condemns both the jurors and the jury system. The assumption that but for the
 
 voir dire
 
 examination the jurors would not have suspicioned that a casualty insurance company was interested in the case reflects upon the intelligence of the jurors. It is a matter of common knowledge that' automobile owners rather generally carry casualty insurance, and that jurors rather generally own automobiles, and that counsel and representatives of the casualty insurance companies do not generally appear at the trial and conduct the defense of suits in which they are not interested.
 

 We know of no character of case where it would be claimed that it would be improper to inquire of a juror whether he is interested directly in the company that will be called upon to respond to a judgment if one be secured, whether such company be a party to the trial or not; and if a juror may be interrogated as to such interest, what principle denies the same inquiry as to his indirect interest?
 

 What is there about the respectable, substantial, and all-pervading business of insurance that would require a different rule to be adopted with reference to it than is adopted with reference to every
 
 *160
 
 other business that may from time to time be directly or indirectly interested in the result of a lawsuit, although not a party to it? We have not such a base estimate of the integrity of jurors generally, nor such a contempt for the jury system, as to lead us to believe that jurors, in violation of their oaths, render verdicts pro and con according to their suspicions that by their verdict a cause of action may or may not arise against an insurance- company; nor are we willing to pronounce a judgment which would condemn a system that is ingrafted upon the government by its fundamental law and has been employed by civilized nations since a period of which history has no record, a system which the Supreme Court of the United States has twice eulogized as “twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of-life than does one man, that they can draw wiser and safer conclusions from
 
 * *
 
 * facts thus occurring than can a single judge. ’ ’
 
 Sioux City & P. Rd. Co.
 
 v.
 
 Stout,
 
 84 U. S. (17 Wall), 657, 664 (21 L. Ed., 745);
 
 Davidson Steamship Co.
 
 v.
 
 United States,
 
 205 U. S., 187, 191, 27 S. Ct., 480, 51 L. Ed., 764.
 

 Indeed in this very case we learn, off the record, but from argument of counsel, that upon its first
 
 *161
 
 trial, where the same character and scope of examination of the jurors was indulged in, a verdict for the plaintiff in error was returned and judgment entered upon such verdict; that that verdict was reversed in the Court of Appeals (27 Ohio App., 26, 160 N. E., 737) for error in the charge of the court. This case, therefore, furnishes its own refutation of the argument of plaintiff in error.
 

 The many authorities upon this subject are collated in 56 A. L. R., at page 1454, and succeeding pages; 35 Corpus Juris, at page 394; 16 Baling Case Law, at page 276, and, because of their number and near unanimity, it would be profitless to cite them separately here. The overwhelming weight of authority supports the view here reached. The few courts that have reached a contrary conclusion recognize the fact that a juror who is interested directly or indirectly in a casualty insurance company is not qualified to sit as a juror in a case where the casualty insurance company will ultimately be required to reimburse the assured litigant, in whole or in part, if a judgment is obtained against him, and such courts suggest that the presence or absence of such interest-may be elicited from the juror upon his
 
 voir dire
 
 examination by the circuitous route of asking him generally as to his occupations, employments, investments, and relationships, and by broadening the scope of the inquiry so as to require the juror to disclose all his occupations, employments, investments, and relationships. Such an examination would necessarily involve the consumption of much time, to the annoyance and expense of the court, the juror, and the parties, would be an unnecessary and unwarranted imposition upon the juror,
 
 *162
 
 and would furnish a potent reason for all persons to avoid jury service.
 

 We are unable to frame a practical rule that will protect the litigants against any inadvertent acceptance of an interested or biased juror and at the same time prevent the inquiry of a juror on his
 
 voir dire
 
 examination as to the existence of nonexistence of such interest or bias. Nor do we regard a business that is generally recognized as legitimate and honorable, and the patronage of which has been promoted and encouraged by compulsory legislation, as requiring the drafting of a special rule exempting those who are connected with it, directly or indirectly, from disclosing such connection when called as jurors to sit in a cause which may result in a verdict and judgment which such business may ultimately be required to pay.
 

 Judgment affirmed.
 

 Matthias, Day and Allen, JJ., concur.
 

 Marshall, C. J., Kinkade and Jones, JJ., dissent.