**BALTIMORE TRANSIT CO. v. FLYNN et al.**

No. 1952.

District Court, D. Maryland.
May 17, 1943.

Philip B. Perlman, Chas. A. Trageser and Harry Troth Gross, all of Baltimore, Md., for plaintiff.

Francis M. Shea, Asst. Atty. Gen., Sidney J. Kaplan, Sp. Asst. to Atty. Gen., and Bernard J. Flynn, U. S. Atty., of Baltimore, Md., for defendants.

COLEMAN, District Judge.

The defendants have moved to dismiss the bill of complaint on thirteen separate grounds. The first of these grounds is that the complaint fails to state a claim on which relief can be granted against these defendants or either of them. If this is a meritorious ground, then the motion to dismiss must be granted and it will become unnecessary to consider the remaining grounds, so we will proceed at once to consider the first ground. The fundamental basis of any right to injunctive relief is that the party seeking it is without adequate remedy at law and will suffer immediate and irreparable harm and damage if the doing of the alleged unlawful and harmful act is not restrained. Thus there are at the very outset two questions that must be answered: First, what is it, the doing of which plaintiff seeks to have prevented, and second, who are the persons the plaintiff claims are about to do these things? As to the first, plaintiff seeks to prevent enforcement against it of two Orders of the National War Labor Board, one dated November 18, 1942, and the other April 27, 1943, and seeks to prevent having any measures taken to penalize plaintiff for failure to comply therewith.

The first of these Orders directed the plaintiff to recognize an American Federation of Labor Union known as the Amalgamated Association of Street Electric Railway and Motor Coach Employees of America for purposes of grievances; ordered the establishment of a special procedure for the hearing and determination

of grievances alleged to be suffered by plaintiff's employees affiliated with Amalgamated, and provided for the appointment of a permanent arbitrator to hear and finally determine all alleged grievances.

The later Order directed the plaintiff: (1) To comply with the award of the Arbitrator that Carmen O. Chilcote, one of plaintiff's employees who had been discharged for attempting, while under the influence of liquor to operate one of plaintiff's street cars, be offered immediate reemployment with full payment for time lost as a result of his discharge; (2) to offer immediate reinstatement to nine other of plaintiff's employees who had been discharged because found by plaintiff to have encouraged its employees to disobey rules, to practice insubordination and otherwise to impair and destroy discipline, all in the interest of strengthening the Amalgamated Union and attacking and preventing recognition of another union which had been recognized and negotiated with by plaintiff since 1937, that is, four years before the Amalgamated Union was organized among plaintiff's employees. This earlier union was known as the Independent Union of the Transit Employees of Baltimore City and now embraces and always has embraced a great majority of plaintiff's employees who now number approximately 3,700. The nine discharged employees were ordered reinstated in conformity with the order of the National Labor Relations Board, resulting from proceedings before that Board which had been initiated by the Amalgamated Union. That Board also ordered plaintiff to dis-establish the Independent Union and gave plaintiff ten days within which to inform the Board what steps it had taken to comply with the Order. Within the ten days plaintiff notified the National Labor Relations Board that it had taken no steps and thus left that Board to seek enforcement of its order by petition to the Circuit Court of Appeals for the Fourth Circuit, as provided by the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. Neither side has as yet sought recourse to that Court.

Lastly, the War Labor Board's Order of April 27 directed plaintiff to suspend recognition of the Independent Union of the Transit Employees of Baltimore City as the representative of any of the Company's employees for the purpose of collective bargaining, or as to the rates of pay, wages, hours of employment, or other conditions of employment. This Order of April 27th contained a provision to the effect that the second and third parts of it, as above set forth, were without prejudice to the legal rights of the plaintiff to contest any of the findings of fact and the order of the National Labor Relations Board in any court of competent jurisdiction; that if it should ultimately be judicially decided that the National Labor Relations Board acted without jurisdiction, then the second and third parts of this Order of April 27th would terminate; and if it were decided that although the National Labor Relations Board had acted within its jurisdiction, but that its findings of fact were not supported by the evidence, then the Order of April 27th would pro tanto, be terminated. The plaintiff company has not conformed to the terms of the Order and has brought the present suit. So much for an analysis of the action of the National War Labor Board which plaintiff seeks to restrain.

We now turn to a consideration of the position of the defendants against whom the plaintiff would have a restraining order, and ultimately would have a permanent injunction run.

One of the defendants, Mr. Flynn, is United States Attorney for the District of Maryland and the other, Mr. Knell, is District Manager of the Office of Defense Transportation. The bill of complaint merely charges that these two persons are the officers or employees of the Federal Government who enforce compliance or penalize plaintiff for failure to comply with the ultra vires and unlawful orders and Directive hereinafter described. "This suit", continues the bill of complaint, "is brought against them in their individual capacities to restrain them from the imminent and threatened enforcement of said unlawful orders or directives; and plaintiff seeks the same relief against the agents or subordinates of the aforesaid defendants and against any and all others who may be or come within this district for the purpose of enforcing the said Orders or Directives."

The bill of complaint further asserts that "members of the National War Labor Board have informed representatives of the plaintiff that if the plaintiff fails or refuses to comply with the Orders issued by that Board, the members thereof will certify the matter to the President

of the United States with the recommendation that the Federal Government seize the plaintiff's property and take over the operation of its passenger transportation lines. The Amalgamated has caused the strike on the Company's properties and has threatened others. Plaintiff has reason to believe that unless the President acts to seize plaintiff's property, the Amalgamated will attempt to precipitate such action by calling another strike of its members. The Independent Union has threatened to strike if the plaintiff complies with the Order of the National War Labor Board contained in its telegram of April 27, 1943."

However, the aforegoing allegations of the bill do not indicate any statute, nor does this Court know of any, which either expressly or impliedly authorizes either defendant Flynn or defendant Knell to take any action to enforce any Orders of the National War Labor Board. Furthermore, their affidavits, made part of the motion to dismiss the bill of complaint, expressly deny any such authority or any intention to enforce any such Order.

As Mr. Flynn's affidavit asserts—and the assertions have not been successfully controverted—the bill of complaint is really brought against him in his official capacity as United States Attorney for the District of Maryland. As an individual he is not charged with enforcement of Orders of the National War Labor Board, nor with penalizing plaintiff for failure to comply therewith, nor has he been given any authority to take any steps whatsoever for those purposes. He has neither taken nor threatened to take any such steps.

In his official capacity as United States Attorney, Mr. Flynn has had no connection with any of the subject matter of the bill of complaint, nor has he any authority by virtue of his office to take any steps to compel the plaintiff to comply with Orders of the National War Labor Board. This Court has been referred to no statute or executive order, or to any rule or regulation or direction from any superior officer which places a duty upon Mr. Flynn or which empowers him to take any steps to enforce compliance with such orders. There is no showing that, as United States Attorney, he has taken any such steps in the past, or that he intends to do so in the future, or has threatened to do so.

Mr. Flynn further states in his affidavit that, were the present action one against the individuals who compose the National War Labor Board, he would participate in the matter, together with the Assistant Attorney General, as attorney for the defendant members of that Board, but that in the present action he is participating with the Assistant Attorney General as attorney pro se, and for the co-defendant Knell; that only the President has the authority to enforce Orders of the National War Labor Board or to impose any sanction for failure to comply therewith, and that this power has not been delegated to him, Mr. Flynn, either in his individual or his official capacity.

The same appears to be equally true with respect to the other defendant, Knell. As appears from his affidavit, he is an employee of the Office of Defense Transportation and has never received instructions to act, nor has he ever acted or threatened to act to enforce compliance by the plaintiff with Orders of the National War Labor Board. It is true that the Office of Defense Transportation is the agency through which the President of the United States on occasion has seized, and may in the future seize transportation properties for failure to comply with Orders of the War Labor Board, but there is nothing before this Court in the present suit to indicate that the defendant Knell has been empowered expressly or impliedly to act as the agent of the President or of any one else so to do.

 It is, of course, a well settled legal principle that one threatened with direct and special injury by the act of an agent of the Government which, but for statutory authority for its performance, would be a violation of his legal rights, may challenge the validity of the statute in a suit against the agent. Philadelphia Co. v. Stimson, 223 U.S. 605, 619, 32 S. Ct. 340, 56 L.Ed. 570; Stafford v. Wallace, 258 U.S. 495, 512, 42 S.Ct. 397, 66 L.Ed. 735, 23 A.L.R. 229; Commonwealth of Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078. Also, where the act complained of is not authorized by statute, or where the statute authorizing it is void because it conflicts with some provision of the Constitution, the person attempting it may be restrained in a proper case, notwithstanding his claim that he is acting in his official capacity. In such case he is acting, not within the law, but outside it, his act is not the act of the Government, and the law affords

him no protection for what he is doing or is about to do. This is true, whether he be the head of a department or merely a subordinate acting under orders; and if a subordinate, there is no necessity of joining as defendant the head of the department because the orders of the head are immaterial if the act sought to be enjoined is not authorized by law. Ferris v. Wilbur, 4 Cir., 27 F.2d 262.

But the status of neither of the defendants, Flynn nor Knell, is such as to bring them within the above principles, because it follows as a necessary corollary of these principles, that equitable relief can never lie against persons to prevent them from doing that which they have never threatened to do and have no power to do.

The bill of complaint asks that a temporary restraining order and ultimately a permanent injunction "be made applicable to all who may be, or come into this District for the purpose of attempting to enforce" the orders complained of, or to "penalize plaintiff for refusal to comply therewith." This, however, does not add any strength to the bill on equitable grounds. It is true that one who knowingly assists a defendant in violating an injunction subjects himself to civil as well as criminal proceedings for contempt. On the other hand, this Court can make no decree which will bind any one but a party. It can not lawfully enjoin the world at large. It is not vested with power generally to declare any conduct unlawful. Its jurisdiction is limited to those over whom it gets personal service—those who can have their day in court.

Furthermore, if the intent of the plaintiff is that the present suit shall be construed as a suit against any and all officials of the United States who may at any time be, or come into the Maryland District, and have any thing to do with enforcement of the orders of the National War Labor Board here complained of, then such would be tantamount to a suit against the United States, and it must fail for this reason, because the United States can not be sued without its consent.

For the reasons which we have just given, we are compelled to hold that the bill of complaint must be dismissed entirely, because it fails to state a case on which any relief can be granted against either defendant.

Also, since there is no case or controversy between the plaintiff and the defendants, there is likewise no basis for granting the plaintiff the additional relief which it asks, namely, a declaratory judgment that the National War Labor Board Order of April 27, 1943, is unlawful and void.

It becomes unnecessary, therefore, to consider any of the other grounds for dismissal which have been urged upon us by the defendants' motion to dismiss. Also it becomes unnecessary for us to discuss whether the relief prayed in the bill is of a sort that could or should be granted plaintiff were the members of the National War Labor Board, or any of its representatives, or agents, charged with enforcement of the Orders in question, made parties defendant and were actually within the jurisdiction of this Court and duly served with its process. Similarly, it becomes unnecessary to decide whether the assumption of authority by the National War Labor Board is unlawful, in view of the case which is still open to appeal, in which the National Labor Relations Board has taken jurisdiction and rendered a decision in directly related matters; or is unlawful for other reasons.

However, the present controversy, from the point of view of the public interest, is extremely important in its direct bearing upon the orderly, uninterrupted and successful prosecution of the war effort in this locality. Government counsel, on the one hand, charge plaintiff's joinder of the present defendants as being so baseless as to be fraudulent, since the present defendants have no connection with the matters sued on. Plaintiff's counsel, on the other hand, assert that, because members of the National War Labor Board reside in Washington—at least for purposes of jurisdiction to be sued in their official capacity—and because, as would appear, they have no representative or agent in the Maryland District or, indeed, anywhere else in the United States, they would appear to be immune from suit everywhere except in the District of Columbia, which, for all practical purposes, thus places them, as plaintiff's counsel represent, beyond reach insofar as this plaintiff and countless other corporations and individuals are concerned, because of the great inconvenience and expense involved in bringing suit in the District. For all of these reasons we feel constrained, in the public interest, as

well as for the immediate purposes of the present controversy, to add the following:

The National War Labor Board was established by Executive Order No. 9017 of January 12, 1942, the declared purpose of its establishment, as set forth in the preamble of the Order, being that by reason of the state of war "the national interest demands that there shall be no interruption of any work which contributes to the effective prosecution of the war; and that whereas as a result of a conference of representatives of labor and industry which met at the call of the President on December 17, 1941, it has been agreed that for the duration of the war there shall be no strikes or lockouts and that all labor disputes shall be settled by peaceful means, and that a National War Labor Board be established for the peaceful adjustment of such disputes." The Order recites that the Board is created in the Office for Emergency Management by virtue of the authority vested in the President by the Constitution and the Statutes of the United States.

The Order also recites that "this Order does not apply to labor disputes for which procedures for adjustment or settlement are otherwise provided until those procedures have been exhausted." Then follows a recital of the nature of the procedures, namely, initial resort to direct negotiations; if such be unsuccessful, then notification to the Commissioners of Conciliation of the Department of Labor; if still unsuccessful, the Secretary of Labor shall then certify the dispute to the National War Labor Board, provided, however, that the Board in its discretion, after consultation with the Secretary, may take jurisdiction of the dispute on its own motion. The Order further provides that after the Board has taken jurisdiction it "shall finally determine the dispute, and for this purpose may use mediation, voluntary arbitration, or arbitration under rules established by the Board."

The Order closes with the very important provision that nothing contained in the Order shall be construed as superseding or in conflict with the provisions of the Railway Labor Act, 45 U.S.C.A. § 181 et seq. the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. or the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. and two other Acts of more limited application but of a related character.

In the Board's Order of April 27th, which is made the basis of the present bill of complaint, it is recited that this Order is made by virtue of and pursuant to the powers vested in the Board not only by the Executive Order of January 12th, just analyzed, but also by Executive Order No. 9250 of October 3, 1942, "Providing for the stabilization of the national economy." However, this last Order appears to have no direct relation to the matters embraced in the earlier Order of January 12, since the later Order is essentially concerned with control of inflationary tendencies through wage, salary and price stabilization. Just as is the case with the earlier Order, Order No. 9250 provides that nothing in it shall be construed as affecting the present operation of the National Labor Relations Act and Acts of a related character.

Does the National War Labor Board, by virtue of the Order creating it, have authority to act other than in an advisory capacity to the President? Indeed, counsel for the present defendants assert in their brief and argument that the Board's functions are "advisory only", and that the function of the Board in the present case "became fully executed upon the issuance of the directives complained of and nothing remains to be enjoined."

We believe in the present case that this is substantially the true status of the Board. It does not exist as a tribunal to determine the legal rights and obligations of employer and employe, or to protect and enforce such rights, but merely to decide how such rights, in the Board's opinion, are to be exercised in the public interest in view of the state of war. Its creation and jurisdiction are not based upon any express statutory authority, in spite of what is said in the preamble of Executive Order No. 9017, creating it. The function of the Board is to give expression of its views of the moral obligation of each side to the controversy, as members of society, to agree upon a basis for cooperation in the public interest. The jurisdiction and power of the Board to direct parties to do what it deems they should do in such interest is not limited by their constitutional or legal right to refuse to do it. There is no constraint upon the parties to do what the Board may decide they should do, except moral constraint. See Pennsylvania R. Co. v.

United States Railroad Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536; Pennsylvania Railroad System & Allied Lines Federation v. Pennsylvania R. Co., 267 U.S. 203, 45 S.Ct. 307, 69 L.Ed. 574; Robertson v. Railroad Labor Board, 268 U.S. 619, 45 S.Ct. 621, 69 L.Ed. 1119. See, also, Virginian R. R. Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L. Ed. 789.

We are, of course, not to be understood as referring to a situation which we do not find here (because arbitration was accepted by the plaintiff only under great protest and with reservation of the right to take, in the future, such other steps as it might deem necessary), where industry or labor or both have agreed with the Government through the National War Labor Board that they will, without any conditions still to be fulfilled, abide by this or that decision of the Board, and then they deliberately violate their agreement. Such an attitude on the part of either industry or labor might well be tantamount to creating an estoppel against them. In any event, any such conduct is indefensible, highly reprehensible, and demands complete public condemnation, especially where, as for example in the current controversy with the coal miners' union, strikes, and thereby direct interference in a most vital industry with the prosecution of the war, have been wilfully brought about by the union heads in the face of their agreement to ban the same. Let the distinction between this latter type of case and the present case be clearly understood.

Similarly, it appears uncontradicted that the present plaintiff has never agreed to reinstate its employe Chilcote, except as part of a voluntary settlement of the entire labor controversy involved, and then only in some capacity other than that of an operator of any of its facilities.

The powers of the National War Labor Board through its own directive Orders, per se, are not to be confused with the powers of the President of the United States himself, in his position as Chief Executive and Commander-in-Chief of the Army and Navy, to take possession of and to operate private industries and public utilities of, we may say, endless kinds and varieties, if such is essential, in the discretion of the President, to the proper prosecution of the war effort. What the President can or may do as the result of the present controversy or of any future situation with respect to the plaintiff company, in the event the National War Labor Board certifies the matter to him with the recommendation that he seize plaintiff's property and assume the operation of its transportation lines, is a question not before this Court. Therefore, this Court is not called upon to consider it. However, it should be stated that the President's war powers as Commander-in-Chief of the Army and Navy of the United States, with respect to possession and operation of industry involved in and essential to the war effort, are inherently very broad. What the limits may be to the exercise of such powers are to be determined if and when the issue is directly raised. Parenthetically, it may be noted that we have had an example of the recent exercise of the war powers of the Executive in the Maryland District when, in October, 1942, Triumph Explosives, Incorporated, a manufacturer of war materials at Elkton, Maryland, was taken over and operated by the Secretary of the Navy pursuant to direction of the President by Executive Order No. 9254.

In the present case, the Court has been informed by counsel for the defendants that both the War and Navy Departments have informed the Board that a strike called by the Amalgamated would undoubtedly cripple the transportation system of the plaintiff company, and thus threaten the vast production of war material by local war plants, 45 per cent of whose employees are said to use the facilities of the plaintiff company in traveling to and from their work. Similarly, there is before the Court a letter from the Army stating that in its opinion what the Board has thus far done in the present matter has averted a strike, and urging that the matter be vigorously pursued to a final settlement.

On its own part the plaintiff company stands unequivocally upon its statement—and this Court has no reason to doubt the statement—that it believes no union should strike in time of war no matter what the provocation may be, and that if the Order of the Board should be carried out, it would produce a strike of its employees, through one or the other of the two Unions involved, and this in the face of the fact as the bill of complaint alleges—which is not denied—that there has been developed no evidence of anti-union bias on the part of plaintiff.

Although the bill of complaint must be dismissed, and, therefore, the Court is

not called upon to deal with the case upon its merits, nevertheless the following further observations would appear to be appropriate in view of the great importance of the issues here involved:

There is nothing to indicate either from the pleadings in the present case or from the briefs or arguments that the plaintiff company is defying the Government and wilfully impeding the war effort, as counsel for the defendants suggest. On the contrary, its transportation record and its unusual freedom from labor trouble indicate very able operation of its facilities, and great public approval, and there is nothing in the case to support the suggestion that the company's management is other than most loyal in its endeavors and desires to further the war effort.

Nor would there appear to be anything in the contention of counsel for the defendants that the present suit has been brought in bad faith, and as a mere device to avoid the jurisdictional and venue limitations of this Court. Above and beyond all other considerations, this Court can not blink the fact that even though the bill of complaint must be dismissed, there stands out prominently in this litigation a bona fide, frank and earnest effort on the part of the plaintiff company—to make which is its legal right—to insist upon there being adopted some method, which the National War Labor Board has, up to the present time, apparently declined to support, to find out what a majority of the company's employees really desire in the way of Union recognition. It is earnestly to be hoped that this can be done.

Finally, since, as counsel for the defendants admit, and this Court finds, that the status of the members of the National War Labor Board is essentially that of advisors to the President, and since in the present case there has been no certification by them of this matter to the President with the recommendation that the Federal Government seize the plaintiff's property and take over the operation of its transportation lines—much less any direction from the President to the members of the Board to see that such possession and operation is carried out—or indeed any certification or recommendation of any kind to the President, it is somewhat difficult to understand why the Board should have couched its communication of April 27th to the Company in the language of a mandatory directive order, as it has done.

Similarly, it is difficult to see why the National War Labor Board should use its authority in an attempt to require, allegedly in the public interest, that the plaintiff company re-employ one who has been discharged for attempting to operate one of plaintiff's cars while under the influence of liquor—a fact which stands undenied on the pleadings, briefs and arguments in the case, except by the self-serving declaration of the employee himself.

 It is one thing for the Government to take over and operate private enterprise. It is quite another thing for the Government to attempt to accomplish the same results that it would like to accomplish, as between labor and industry, by indirect control of industries' internal management. The distinction is clear and should be constantly kept in mind. The state of war has not destroyed nor suspended the right to judicial determination of constitutional rights. The federal courts are charged with the duty of protecting such rights which are inherent in this distinction, when the issue is properly presented and joined.

The Court will sign an order in conformity with this opinion.