In the Matter of ALAN C. ABEEL et al., as Directors of DIAMOND MILLS PAPER COMPANY, INCORPORATED, Respondents. FREDERICKA D. ACKERMAN et al., Appellants.

Argued February 28, 1951; decided May 24, 1951.

*John E. Egan, Louis P. Francello* and *Frank Campochiaro* for appellants. I. The written agreement of May 9, 1945, was a valid arbitration contract under which the parties voluntarily agreed to submit the labor controversy then pending between them to the decision of the hearing officer and the National War Labor Board as the duly nominated arbitrators under said agreement. (*Garr* v. *Gomez,* 9 Wend. 649; *Matter of Hub Industries* [*George Mfg. Corp.*], 183 Misc. 767, 269 App. Div. 177, 294 N. Y. 897; *Matter of Webster* v. *Van Allen,* 217 App. Div. 219; *Davis* v. *Rochester Can Co.,* 124 Misc. 123; *Metropolitan Life Ins. Co.* v. *Durkin,* 301 N. Y. 376; *Matter of Mencher* [*Abeles & Kahn*], 274 App. Div. 585; *Matter of Thorsen & Co.* [*Neves*], 179 Misc. 11; *Publishers' Assn. of N. Y. City* v. *New York Typo. Union No. 6,* 168 Misc. 267; *Berizzi Co.* v. *Krausz,* 239 N. Y. 315.) II. The decisions of the nominated arbitrators, made after due hearings and upon the evidence and which were rendered in accordance with the aforesaid written agreement of submission, were not merely advisory, but were binding on all parties in accordance with their agreement and understanding. III. The two-day strike which took place a month after the final decision of the hearing officer did not constitute a breach of the agreement; but even if it did, such breach did not vitiate the entire contract of arbitration — at most it would give rise to an offset of damages had any in fact accrued. (*Trainor Co.* v. *Amsinck & Co.,* 236 N. Y. 392; *Matter of Mencher* [*Abeles & Kahn*], 274 App. Div. 585.)

*William A. Kirk* and *Robert F. Nolan* for respondents. I. The parties followed the usual procedure in submitting their differences to the National War Labor Board. The stipulation of submission did not extend the customary jurisdiction of the board. II. Directives of the National War Labor Board are only advisory and cannot be enforced in a court of law. (*Employers Group of Motor Frgt. Carriers* v. *National War*

*Labor Bd.,* 143 F. 2d 145; *National War Labor Bd.* v. *Mont-gomery Ward & Co.,* 144 F. 2d 528, 323 U. S. 774; *National War Labor Bd.* v. *United States Gypsum Co.,* 145 F. 2d 97, 324 U. S. 856; *Baltimore Tr. Co.* v. *Flynn,* 50 F. Supp. 382.) III. The conduct of appellants in striking prior to final decision of the National War Labor Board constituted a breach of the contract of submission. (*Jerome* v. *Queen City Cycle Co.,* 163 N. Y. 351.) IV. The stipulation entered into before the referee did not lead him to conclude, as he did, that appellants agreed not to strike during the pendency of the proceeding before the National War Labor Board. (*Baltimore Tr. Co.* v. *Flynn,* 50 F. Supp. 382; *Pines* v. *Beck,* 300 N. Y. 181; *Hine* v. *New York Elevated R. R. Co.,* 149 N. Y. 154; *Matter of New York, L. & W. R. R. Co.,* 98 N. Y. 447.)

CONWAY, J. Claimants, 139 in number, have filed claims against the corporate assets of the Diamond Mills Paper Company, Incorporated, now in dissolution under section 105 of the Stock Corporation Law. The claims are based upon wage awards to which the claimants assert they are entitled as a result of a proceeding before the National War Labor Board.

All of the claimants are former employees of the Diamond Mills Paper Company (hereinafter referred to as Company) and all were members of a union known as the International Brotherhood of Papermakers, Local 452 (hereinafter referred to as Union), which had a labor agreement with Company expiring December 31, 1944. Upon the expiration of the contract, negotiations were begun between Union and Company with respect to the terms of a new contract. Negotiations continued for a period, of over four months, to May 9, 1945, during which time the employees continued to work without a labor contract. The death of the sole stockholder on February 15, 1945, undoubtedly delayed matters. At his death he appointed the three petitioners as executors, one of whom had been his counsel.

Company and the employees were unable to resolve their differences in respect to wages, paid holidays and vacation pay. Neither party was willing to enter into a new contract until an agreement was reached covering those three issues. Union threatened to go out on strike but on May 9, 1945, both parties agreed to submit the matters in dispute to the National War

Labor Board. Thereafter, hearings were held before a hearing officer appointed by the Regional War Labor Board who made findings favorable to claimants. The Regional War Labor Board thereupon made directives dated August 29, 1945, and September 8, 1945, granting claimants certain wage increases, paid holidays and vacation pay, retroactive to the date the dispute arose. The petition of Company for review was denied by the National War Labor Board and the directive orders of the Regional Board were affirmed and adopted by a directive order dated November 8, 1945. In the meantime, after the directives of the Regional Board and while the application for review was pending, the employees of Company went out on strike on October 6, 1945, because of the claimed failure of the employer to consider itself bound to comply, as promised by counsel, to be referred to later, with the directives of the board.

On October 9, 1945, three days later, the mill and all other assets at Saugerties, New York, where the claimants were employed, were sold to a new owner. The directors retained the stock and are now dissolving the corporation under section 105 of the Stock Corporation Law.

The principal question to be determined is whether the parties are bound by the decision of the National War Labor Board. The board was created on January 12, 1942, by Executive Order No. 9017 (U. S. Code, tit. 50, Appendix, § 1507, Note; 7 Federal Register 237), to assist in the peaceful settlement of disputes during World War II. No legislation was enacted making directives of the board enforcible and reviewable in courts of law, Congress having decided against such action. (See *Employers Group of Motor Frgt. Carriers* v. *National War Labor Bd.,* 143 F. 2d 145, 148–149, certiorari denied 323 U. S. 735). The Federal courts in the cases that came before them uniformly held that the directives of the National War Labor Board were advisory only and not enforcible in the courts. (*Employers Group of Motor Frgt. Carriers* v. *National War Labor Bd., supra; National War Labor Bd.* v. *Montgomery Ward & Co.,* 144 F. 2d 528, certiorari denied 323 U. S. 774; *National War Labor Bd.* v. *United States Gypsum Co.,* 145 F. 2d 97, certiorari denied 324 U. S. 856; *Baltimore Tr. Co.* v. *Flynn,* 50 F. Supp. 382; *May Dept. Stores Co.* v. *Brown,* 60 F. Supp. 735).

On the other hand where parties have agreed that they will abide by the decision of the board and then one of the parties deliberately violates the agreement, an estoppel should be raised against the violator under general equitable principles. This view has been suggested in *Baltimore Tr. Co.* v. *Flynn* (*supra,* p. 388). Of course, the parties, if they so chose, could have explicitly stipulated that the matters in dispute would be decided by arbitration and that would be binding on both parties. That is what was done in *Metropolitan Life Ins. Co.* v. *Durkin* (301 N. Y. 376), where the parties expressly stipulated that they would not question the power or authority of the National War Labor Board to fix the wages of insurance agents. When the case came to this court we noted that the stipulation removed from the case any question as to the jurisdiction of the board.

Turning now to the case at bar, it is true that the matters in dispute were submitted to the National War Labor Board in accordance with usual procedure, followed in every case, whereby the parties sign a standard mimeographed form supplied by the board. However, the instant case presents unique features which distinguish it from the cases cited (*supra,* p. 483), dealing with the nature of directives of the board. We are persuaded that the parties here construed their submission of differences by conduct and writing so that they became bound to abide by the decision of the board. Two factors constrain us to reach this result. The first of these is the statement made by counsel for Company, who is not only its counsel but a director and an executor of the sole owner of the stock of Company. The statement was: " I want you to play ball with me, keep the mill running until the Hearing Officer has made her report and the Board decided. Needless to say, we are bound by the decision of the Board." It will be recalled that the Regional War Labor Board, to which the Hearing Officer reported, made its directives on August 29, 1945, and September 8, 1945. The second of these is that when the same counsel drew the petition herein and had it verified approximately four years later he seems to have had the same idea still in mind. Paragraph 8 of the petition reads as follows: " 8. That on May 9, 1945, through the intervention of the United States Conciliation Service, the *Diamond Mills Paper Company, Incorporated,* and

said *International Brotherhood of Paper Makers, Local 452, AFL,* agreed *to submit their differences to the National War Labor Board for determination and to enter into a contract embodying such provisions as might be determined by said Board,* provided that the International Brotherhood of Paper Makers, Local 452, AFL, were to continue to work and receive compensation in accordance with the contract which expired on December 31, 1944, provided, however, if a new contract was eventually entered into, its provisions were to be retroactive until December 31, 1944.'' (Emphasis supplied.)

Reading paragraph 8 of the petition in conjunction with the statement of counsel for Company, it becomes clear that the fair and reasonable interpretation of the intention of the parties is that they both understood and, in that sense, had agreed as practical people in an employer and employee relation that they would abide by the determination made by the board.

It is urged that by going out on strike on October 6, 1945, and remaining on strike for either two or three days during the pendency of the appeal of Company from the Regional Board to the National Board, the employees lost all right to any wage claims. There is no evidence of an agreement not to strike, and such an agreement should not be implied, in view of Executive Order No. 9017 which established the National War Labor Board. Paragraph 7 of the order provided: '' Nothing herein shall be construed as superseding or in conflict with the provisions of * * * the National Labor Relations Act (Act of July 5, 1935, 49 Stat. 457; 29 U. S. Code 151 et seq.) * * *.''

Section 163 of title 29 of the United States Code provided during the period that the controversy was before the board as follows: '' § 163. *Right to strike preserved.* Nothing in sections 151–166 of this title shall be construed so as to interfere with or impede or diminish in any way the right to strike. (July 5, 1935, ch. 372, § 13, 49 Stat. 457.)''

Thus, under the provisions of Executive Order No. 9017 and of section 163 of title 29 of the United States Code, the right to strike was expressly preserved to the employees. In view of the absence of any proof or evidence of a waiver of such right to strike, we conclude that the employees did not lose their rights to the wage awards granted to them by the board.

Conversely, the employees concede that there was no agreement or obligation on the part of Company not to close down or sell its plant, during the pendency of the proceeding before the board, subject only to the requirement that if the board decided that the employees were entitled to an increase in pay, that increase would have to be paid by Company for the period during which employees worked prior to the sale or closing of the plant.

The orders should be reversed, with one bill of costs to appellants in all courts and the matter remitted to Special Term for further proceedings not inconsistent with this opinion.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE, FULD and FROESSEL, JJ., concur.

Orders reversed, etc.