OPINION *Page 2 
{¶ 1} The plaintiff-appellant, Gordon Proctor, Director of the Ohio Department of Transportation, appeals the judgment of the Defiance County Common Pleas Court ordering him to pay the sum of $855,000 to the defendant-appellee, Michael Cook, following a jury trial. On appeal, Proctor claims that the trial court abused its discretion by allowing defense counsel to ask potential jurors their views on issues constituting the merits of the case; that the trial court erred by allowing a defense witness to give expert testimony when the witness had been disclosed as a lay rebuttal witness in discovery; that the trial court erred by prohibiting cross-examination of an expert witness about his qualifications; and that the trial court erred when it denied his motion for a new trial. For the reasons set forth herein, the judgment of the trial court is affirmed.
 {¶ 2} On April 13, 2006, Proctor filed a petition to appropriate property and fix compensation after being unable to reach an agreement with Cook concerning the value of the land Proctor wished to appropriate for a road-widening project. Proctor indicated $118,000 was the fair market value of the property plus any damages to the residue. Cook filed an answer, stating that he was entitled to a jury trial to determine the fair market value of the land and the damage to the residue. *Page 3 
 {¶ 3} The land taken consisted of two different parcels of .247 acres and .379 acres, respectively. The .379 acre taking was over an existing right of way on Baltimore Road. The .247 acre taking was over vacant land in the northwestern corner of Cook's property. Other areas of Cook's land were used as a residential mobile home park. Apparently, the taking resulted in limited access to the mobile home park, and Proctor intended to construct a service access into the park.
 {¶ 4} Following completion of discovery, the case proceeded to jury trial. The jury returned a verdict in favor of Cook, awarding $5,000 for the value of land taken and $850,000 for damage to the residue. Proctor did not prepare the appropriate judgment entry until after he had received a ruling on his motion for new trial, which the trial court denied. Proctor appeals the judgment of the trial court, raising five assignments of error for our review.
 Assignment of Error No. 1 Allowing Cook's counsel to ask potential jurors about their individual views of an issue going to the merits of the case is an abuse of discretion.
 Assignment of Error No. 2 Because Cook's answers to interrogatories identified Tim Smith as a lay rebuttal witness only, the trial court erred by allowing him to give opinion testimony in Cook's case-in-chief. *Page 4 
 Assignment of Error No. 3 The trial court erred by not allowing ODOT to cross-examine Robert Keesey about a statement in his appraisal license application, certified by Keesey to be complete and accurate, when ODOT proffered evidence that it was neither.
 Assignment of Error No. 4 A new trial was warranted because the court's instructions could not "unring the bell" of questioning and argument that appealed to the jury's passion and prejudice.
 Assignment of Error No. 5 Under all the circumstances, the trial court erred by not granting ODOT's motion for a new trial.
 {¶ 5} In the first assignment of error, Proctor contends that voir dire is meant to ensure a fair and impartial jury. Proctor argues that the trial court allowed defense counsel to ask improper questions addressing the main issue of the case. Proctor cites several instances when defense counsel asked potential jurors more specific questions about access to a place and its effect on the value of the property. In response, Cook argues that counsel did not engage in "indoctrination" of the jury. Cook claims that the limited questions were to "alert the jury to the existence of a disputed issue and to ask prospective jurors to listen to that issue carefully." Cook contends that counsel may inquire about the *Page 5 
specific issues of a case during voir dire if the questions are in good faith to make intelligent use of the litigant's peremptory challenges.
 {¶ 6} "The purpose of the examination of a prospective juror upon his voir dire is to determine whether he has both the statutory qualification of a juror and is free from bias or prejudice for or against either litigant. Paragraph 1 of the syllabus of Pavilonis v.Valentine (1929), 120 Ohio St. 154, 165 N.E. 730, followed and approved." Vega v. Evans (1934), 128 Ohio St. 535, 191 N.E. 757, at paragraph one of the syllabus.
 The scope of the inquiry will not be confined strictly to the subjects which constitute grounds for the sustaining of a challenge for cause; but if it extends beyond such subjects it must be conducted in good faith with the object of obtaining a fair and impartial jury and must not go so far beyond the parties and the issues directly involved that it is likely to create a bias, a prejudice, or an unfair attitude toward any litigant. Paragraph 2 of the syllabus of Pavilonis v. Valentine, supra, modified.
Id., at paragraph two of the syllabus.
 {¶ 7} During voir dire, defense counsel engaged in the following dialogue:
 Now, does anyone on the panel have any investments in real estate? Do you — Do you own your business anyone? Okay. You're going to hear a lot about an issue of access during this trial and I know you [indicating toward Ms. Culler] know all about ingress, egress and accesses. Let me ask the other panel have [sic] any of you ever had your entrance into your home or your business changed while you were there? Have you ever had an experience where you've had places where you were wanted to shop or wanted to go where they changed or altered *Page 6 
 the entrances and exits? What kind of experiences were those? A little bit confusing at first maybe.
 * * *
 Is convenience important to you when you are going somewhere to do business?
 * * *
 Is that the case with everyone? Convenience is important for business matters? Is convenience important for your other matters, where you choose to live, where your home, where your streets are? Are those all important to you?
 * * *
 You're going to hear a difference of opinion with regard to that that I'd ask you to listen to very carefully on the issue of access. Anybody not able to follow that request which will be a part of the evidence to listen to all of it and decide based upon what you hear.
(Trial Tr., Mar. 5, 2008, at 44-46).
 {¶ 8} A party's failure to object waives all but plain error.State v. Davis, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 68, citing State v. Lundgren (1995), 73 Ohio St.3d 474, 484,653 N.E.2d 304. In this case, Proctor did not object but simply asked the court for a sidebar, which was summarily denied. A civil action will not be reversed on the doctrine of plain error except in "the `extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" Gable v. Gates Mills, *Page 7 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, at ¶ 43, quotingGoldfuss v. Davidson (1997), 79 Ohio St.3d 116, 122-123,679 N.E.2d 1099.
 {¶ 9} This court has previously held that a trial court did not abuse its discretion when it prevented "counsel from asking jurors if they could obey the court's instructions as to commercial values at intersections and not permit a predisposition as to values to affect their judgment as to the value of the land taken." Richley v.Bowling (1972), 34 Ohio App.2d 200, 206, 299 N.E.2d 288. The court stated, "[i]n view of the serious impact and confusion such questions might have on the issue of damages to the residue, and since the basic willingness of the jurors to follow the court's instructions might be more directly ascertained, we do not believe the court below abused its discretion." Id. at 206.
 {¶ 10} In Columbus v. Andrews (Feb. 27, 1992), 10th
Dist. Nos. 91AP-590, 91AP-880, and 91AP-881, the defendant was on trial for criminal trespass after entering his child's school on several occasions following warnings that he was prohibited from doing so. The prosecutor made the following statements during voir dire: "`I've got a fellow [who] insists on walking in the school and sitting where he wants * * * And it's caused a disturbance three times. It's caused problems, and that's why we're here, because we can't keep him out of the school. * * *'". Andrews, at * 4, quoting (Trial Tr., at 32-33.) The prosecutor later asked individual jurors "whether they thought a rule requiring visitors to report to the *Page 8 
principle's office was a reasonable one and whether they would comply with such a rule." Id. The Tenth Appellate District found that the trial court abused its discretion by allowing the prosecutor's improper statements, noting that counsel may not "argue the facts of the case during voir dire in an effort to commit the jury to a certain view of the evidence" regardless of whether the question is hypothetical or otherwise. Id., citing State v. Huffman (1912), 86 Ohio St. 229, 235,99 N.E.2d 295.
 {¶ 11} On this record, we cannot find plain error. Defense counsel's questioning of the jurors was certainly artless, but his ultimate goal was clearly to ascertain whether the jurors could follow the court's instructions. The jurors were apparently rehabilitated when asked if they could follow the court's instructions, and nobody responded in the negative. Furthermore, Proctor had the option to dismiss any of the "affected" jurors mentioned in his brief, but he opted to use only one peremptory challenge to dismiss one potential juror who was a mayoral candidate. On this record, we cannot find plain error where the jurors indicated a willingness to follow the trial court's instructions, and Proctor did not fully utilize his peremptory challenges in seating the jury. The first assignment of error is overruled.
 {¶ 12} In the second assignment of error, Proctor essentially raises three issues; first, that the trial court erred by allowing a lay witness to give expert *Page 9 
testimony, second, that the trial court erred by allowing a rebuttal witness to testify in the defendant's case-in-chief, and third, that the trial court erred by allowing the witness to introduce his offer to purchase Cook's property as evidence of valuation. In response, Cook admits that his witness, Tim Smith, was identified as a lay witness during discovery. Cook also admits that Smith was designated as a rebuttal witness. However, he adamantly denies that Smith was called as an expert witness. Cook contends Proctor was not surprised by Smith's opinions on valuation because the document referenced by Smith had been disclosed during discovery. Cook argues that Proctor's expert relied on statements made by Smith in creating his appraisals. Finally, Cook claims that the trial court has discretion to allow witnesses to be called out of order.
 {¶ 13} We review the second assignment of error for plain error; Proctor having failed to object. After a recess on the first day of trial, Proctor made several "objections" concerning the testimony he anticipated Smith would provide later in the day. (Trial Tr., at 149). The "objections" lodged by Proctor were essentially an oral motion in limine. Cook's counsel argued against the motion, and the trial court implicitly overruled the motion by simply telling the bailiff to bring in the jury. (Id. at 150). "`A motion in limine is commonly used as a tentative, precautionary request to limit inquiry into a specific area until its admissibility is determined during trial.'" Gable v. GatesMills, *Page 10 103 Ohio St.3d 449, 2004-Ohio-5719, 816 N.E.2d 1049, at ¶ 35, quoting RiversideMethodist Hosp. Assn. v. Guthrie (1982), 3 Ohio App.3d 308, 310,444 N.E.2d 1358; citing State v. Grubb (1986), 28 Ohio St.3d 199, 201-202,503 N.E.2d 142. If the motion in limine is denied by the trial court, the moving party must lodge a timely objection at trial when the issue is reached. Id., quoting Grubb, at 203, quoting Palmer, Ohio Rules of Evidence Rules Manual (1984) 446.
 {¶ 14} After the jury reentered the courtroom, Cook testified on his own behalf and then called Smith to the stand. At no time during Smith's testimony did Proctor object. Accordingly, we review the second assignment of error under the plain error standard.
 {¶ 15} Proctor contends that Smith provided evidence of valuation based on an offer to purchase Cook's property. This Court has previously recognized that "an arm's length sale of property raises the rebuttable presumption that the sale price reflects the true value of the property, unaccepted offers to purchase do not constitute a sale price and so raise no such presumption." Proctor v. Jamieson, 3d Dist. No. 17-2000-19, 2001-Ohio-2187, citing Gupta v. Cuyahoga Cty. Bd. ofRevision (1997), 79 Ohio St.3d 397, 683 N.E.2d 1076. "Analogously, an unaccepted offer to sell at a particular price does not constitute a sale price." Id. Defendant's Exhibit W, which was apparently provided to Proctor during discovery, and which was admitted into evidence, is a purchase agreement signed *Page 11 
by both Cook and Smith as representatives of their respective companies. The purchase agreement provided a purchase price of $302,700 plus a "bonus" of $172,300 "when [Smith] starts construction of the sixty-six (66) lots expansion within six (6) months of ODOT construction completion or six (6) months from [Smith] starting construction on expansion." The document was signed by both parties and was captioned as a "purchase agreement." Furthermore, the testimony at trial established that Cook and Smith had entered into an executory contract that was not enforced. Accordingly, Proctor's argument concerning the admissibility of the "offer" is without merit.
 {¶ 16} Proctor next contends that the trial court erred by allowing Cook to call Smith out of order. Rebuttal testimony is "`given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence.'"Brothers v. Morrone-O'Keefe Dev. Co., LLC, 10th Dist. No. 05AP-161, 2006-Ohio-1160, at ¶ 6, quoting State v. McNeill (1998),83 Ohio St.3d 438, 446, 700 N.E.2d 596. A party has an unconditional right to present rebuttal evidence if "(1) the evidence is not cumulative; (2) the evidence would not be appropriate for the party's case-in-chief; and (3) the evidence is first addressed in the opponent's case-in-chief." Id., citing Lucas, Prendergast, Albright, Gibson, Newman v.Zschach (Sep. 12, 1996), 10th Dist. *Page 12 
No. 95APE12-1663; Lawson v. Bd. of Edn. of the Columbus City Sch. Dist.
(Aug. 1, 1996), 10th Dist. No. 95APE11-1505.
 {¶ 17} R.C. 163.09(F) provides that the trier of fact is to determine the value of the appropriated land and any damages thereto with neither party bearing a burden of proof. Smith's testimony was more than mere rebuttal and was appropriate for introduction during Cook's case-in-chief, as it tended to show valuation. Finally, we note that Evid. R. 611(A) gives trial courts broad discretion in conducting a trial, including the ordering of presentation of evidence. Cox v.Cardiovascular Consultants, Inc., 5th Dist. No. 2006 CA 00389, 2007-Ohio-5468, at ¶ 26. Smith testified concerning several aspects of the mobile home that were affected by the appropriation and subsequent construction, all of that testimony provided some proof of value for Cook. On this record, we cannot find plain error.
 {¶ 18} Finally, Proctor contends that the trial court erred by allowing Smith, identified as a lay witness, to provide opinions as an expert. Again, Proctor failed to object to any of Smith's testimony, and the argument is again reviewed for plain error. Smith testified that he had been involved with property management since 1984, and had developed trailer parks for eight years. Smith opined that from a marketing standpoint, a mobile home park owner does not want residents to make more than one turn from a major thoroughfare because more turns make *Page 13 
the location complicated and people tend to forget about the property. (Trial Tr., at 290). Smith stated that immediate access to a mobile home from the main road is important, and that access to a mobile home park is imperative. (Id. at 290-291). He testified that he had entered into a contract to purchase Cook's mobile home park, but that the agreement had not been performed. (Id. at 294). Smith testified that the new entrance into the mobile home park proposed by ODOT was not reasonable access and would make a "big difference" in the value of the property. (Id. 298-299). Smith's opinion was based on his knowledge of the current sizes of mobile homes and the difficulty of maneuvering them into a lot. Finally, Smith opined that raising Cook's occupancy level in the mobile home park from between 40-50% up to 90% within one year was not feasible. (Id. at 301).
 {¶ 19} In this case, we cannot find error prejudicial to Proctor in the trial court allowing a lay witness to unexpectedly provide expert testimony. See generally Henry and Fulton County Loc. R. 4.06(B); Am.Select Ins. Co. v. Sunnycalb, 12th Dist. No. CA2005-02-018, 2005-Ohio-6275, at ¶ 15-16. Proctor's expert witness, Bruce C. Dunzweiler, included information about Smith and the mobile home parks he had purchased and operated in his appraisal of Cook's property. Although Smith's trial testimony seems to differ from the information contained in Dunzweiler's appraisal dated April 13, 2007 and introduced at trial *Page 14 
as Plaintiff's Exhibit 16, Proctor can hardly claim surprise and had adequate opportunity to cross-examine Smith. We cannot find the trial court's decision to allow Smith's testimony to be plain error. The second assignment of error is overruled.
 {¶ 20} In the third assignment of error, Proctor contends the trial court erred by prohibiting his cross-examination of Robert Keesey, Cook's expert witness. Proctor apparently wished to explore Keesey's criminal background, which he was required to disclose on the application to renew his appraiser's license. At trial, the following conversation occurred between Proctor's counsel and Keesey:
 Q: And in March of 2007 you applied to renew your Ohio license for this year, didn't you?
 A: It may have been February but I applied in either late February — The date is March the 4th so probably it was in February that I applied.
 Q: Okay. I'm going to hand you what has been marked as Plaintiff's Exhibit 10. Do you recognize your signature on the bottom of that document?
 A: That's my signature.
 Q: Okay. And this was your application to renew your appraisal license for this year, right? The `07 to `08?
(Trial Tr., at 432). Before Keesey could answer the last question, Cook's attorney requested a sidebar. Following a "brief discussion" off the record, the court admonished the jury and had them leave the courtroom. Outside the jury's presence, the parties argued whether Proctor could inquire about Keesey's prior conviction from Toledo Municipal Court. During argument to the court, Proctor *Page 15 
stated that the offense Keesey disclosed on his application was different than the offense he had disclosed during his deposition, and both of those statements differed from the offense specified on the certified judgment of conviction. The court ruled that the questioning "may be tangentially relevant but the prejudicial effect outweighs any probative value[.]" (Id. at 438). The court went on to state that the offense had no effect on Keesey's licensure and as such, it was of "minimal probative value and, obviously, prejudicial and it's relatively insignificant[.]" (Id. at 439).
 {¶ 21} As in our discussion of the second assignment of error, Cook's request to approach the bench was not a formal objection. Furthermore, the "objection" was anticipatory and amounted to an oral motion in limine to prevent inquiry, which the trial court granted. The Supreme Court of Ohio has stated "`it is incumbent upon a [party] who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal.'" Garrett v. Sandusky (1994), 68 Ohio St.3d 139,141, 624 N.E.2d 704, quoting State v. Grubb (1986), 28 Ohio St.3d 199,503 N.E.2d 142. Although the court granted Cook's motion in limine, Proctor did not make a proffer. *Page 16 
Accordingly, Proctor has waived the issue for appeal. Id. The third assignment of error is overruled.
 {¶ 22} In the fourth and fifth assignments of error, Proctor argues a new trial was warranted because defense counsel inappropriately played on the heartstrings of the jury. Proctor contends that defense counsel influenced the jury by stating that Proctor had treated Cook unjustly; that Proctor's expert witness had concealed evidence; and that defense counsel made several emotional statements during closing arguments. Proctor further claims the jury was confused because a comparison of per acre prices between the value of the property and the damages to the residue were inconsistent.
 {¶ 23} In response, Cook's attorney adamantly rejects the idea that he engaged in professional misconduct. He states that he withdrew improper questions; that his "apology" to the jury was simply "Trial Practice 101;" and that the instances cited by Proctor were isolated and taken out of context. Cook also cites case law indicating that a "per acre" rule was rejected by the Supreme Court of Ohio.
 {¶ 24} A new trial will not be granted on the basis of excessive damages "`unless the movant is able to establish that the verdict resulted from jury passion and prejudice and that the damages were "so overwhelmingly disproportionate as to shock reasonable sensibilities."'"Prowant v. Massie, 3d Dist. No. 1-02-25, *Page 17 
2002-Ohio-4458, at ¶ 20, quoting Frost-Balazowich v. Yehnert, 9th Dist. No. 20602, 2002-Ohio-11, at ¶ 12, quotingPena v. Northeast Ohio Emergency Affiliates, Inc. (1995),108 Ohio App.3d 96, 104, 670 N.E.2d 268. To determine whether a jury award was influenced by passion or prejudice, appellate courts must consider:
 "`not only the amount of damages returned * * * but it also becomes the duty of such court to ascertain whether the record discloses that the excessive damages were induced by (a) admission of incompetent evidence, (b) by misconduct on the part of the court or counsel, or (c) by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded.'"
Conway v. Dravenstott, 3d Dist. No. 3-06-05, 2006-Ohio-4840, at ¶ 13, quoting Sindel v. Toledo Edison Co. (1993), 87 Ohio App.3d 525, 531,622 N.E.2d 706, quoting Fromson Davis Co. v. Reider (1934),127 Ohio St. 564, 189 N.E. 851, at paragraph three of the syllabus.
 {¶ 25} Although Proctor points to several instances of alleged misconduct by defense counsel during cross-examination and during closing arguments, none of those statements can amount to misconduct in this case. First, we note that the amount of damages ascertained by the jury is within the range of appraisals presented at trial, although it is significantly closer to Cook's appraisal than to Proctor's. Therefore, the bottom-line dollar amount is supported by evidence *Page 18 
presented at trial. Proctor objects to several statements made by defense counsel during cross-examination. The first was objected to and withdrawn. The second was objected to, withdrawn by counsel, and a curative instruction was given by the trial court.
 {¶ 26} Proctor also complains of several statements made by defense counsel in closing arguments. The first came by way of an "apology" for counsel's sometimes "aggressive" behavior. Proctor did not object to this statement, which counsel concluded by asking the jury to not hold his actions against his client. Proctor has waived this error for review. The other "inappropriate" comments were objected to by Proctor, and the court issued a curative instruction on one of the objections. Many of the statements made by Cook's counsel were loosely supported by the evidence. Any other errors were cured by way of instruction. And, as we noted, the verdict reached was based on the evidence.
 {¶ 27} Finally, the Ohio Supreme Court has held that a jury's verdict is sufficient if "the sum total of the verdict is within the sum total of evidence." Proctor v. Bader, 5th Dist. No. 03CA 51,2004-Ohio-4435, at ¶ 19, citing Preston v. Rappold (1961),172 Ohio St. 524, 528, 178 N.E.2d 787. The sum total of $855,000 was within the sum total of the evidence presented at trial, as Cook's *Page 19 
expert had given a valuation of up to $955,000. The fourth and fifth assignments of error are overruled.
 {¶ 28} The judgment of the Defiance County Common Pleas Court is affirmed.
Judgment Affirmed.
 SHAW, P.J., and PRESTON, J., concur.
 *Page 1