Jones, J.
 

 On January 4, 1930, a truck, driven by an employee of the plaintiff in error, was proceeding in the center of the street northwardly on East 148th street in the city of Cleveland. The street at the point where the accident occurred was in an icy and slippery condition. About the same time a number of children were engaged in coasting down and along a driveway, which entered 148th street from the east. About the time the truck driver reached a point nearly opposite the driveway, a little girl, coasting down the driveway, suddenly emerged therefrom and onto the street pavement in front of the truck; and in an endeavor to avoid striking her the driver, swerving his truck to the right
 
 *566
 
 and east, was suddenly confronted with the imminence of peril to the plaintiff below, who, appearing from the same driveway, was also coasting down it immediately behind the girl. "When the driver swerved his truck, in applying the brakes, he skidded to the right, over the east curb of 148th street upon the adjoining tree lawn. The driver testified that his truck struck the boy upon the street pavement, and before it reached the curb.
 

 Relying upon these developments counsel for plaintiff in error asked for and the court gave a special request before argument, which stated in substance that, if the jury found that the driver was confronted with such sudden emergency, and that he did not' have sufficient time to determine with certainty the best course to pursue to avoid injuring the girl, the driver should not be “held to the same accuracy of judgment as is required of him under ordinary circumstances, and that he is not liable for injuries caused by his motor truck if an accident occurs even though a course of action other than that which he pursued might have been more judicious, provided he exercised ordinary care in such emergency and under the stress of circumstances, to avoid an accident.”
 

 The driver also testified that he saw some ten or twelve children with sleds in the vicinity of the driveway; but that, when the little girl emerged from the driveway, he saw no children there at that particular time, except the little girl who was about thirty-five feet distant from the street. The testimony of witnesses for the plaintiff tended to support plaintiff^ claim that the swerving of the truck, and its skidding over on the tree lawn, was caused by the want of ordinary care upon the part of the driver in negligently driving at a speed of about twenty-five miles an hour when he had knowledge of the icy condition of the street and when he had notice of the fact that children with sleds were in the vicinity of the driveway. Coun
 
 *567
 
 sel for defendant in error contend that these and other circumstances, together with the reasonable inferences drawn therefrom, presented a case where the jury could well have found that the driver of the truck did not use ordinary care under such circumstances. By their general verdict the jury resolved the issues in favor of the plaintiff below, and we do not feel inclined to disturb the verdict upon the question of fact thus presented.
 

 The amount of the verdict was $15,000; the remittitur consented to by the plaintiff below was fifty per cent, of that sum. One of the chief attacks upon the judgment below is made because of the large amount remitted from the verdict. The power of the trial and appellate courts to order remittiturs with the. consent of the plaintiff has been frequently considered by this court, and that power has been generally upheld. While heretofore there has been some diversity of opinion upon that question, our more recently decided cases reveal that there has been substantial unanimity among the members' of this court in upholding the power of entering remittiturs in actions founded upon tort. As shown in our former opinions, we have been constrained to adhere to that doctrine for reasons of public policy and to avoid granting new trials which the plaintiff does not desire. By the avoidance of recurring trials and-by its tendency to relieve the ever-growing congestion of cases upon our court dockets, such a procedure conduces to the economic advantage of both litigants and the courts. In upholding the general power of the courts to require and order remittiturs, we have adhered to the principle adopted not only by the federal courts, but by courts in a majority of the states. The several Ohio cases dealing with the subject are
 
 Schendel
 
 v.
 
 Bradford, Admr.,
 
 106 Ohio St., 387, 140 N. E., 155;
 
 Silverglade
 
 v.
 
 Von Rohr,
 
 107 Ohio St., 75, 140 N. E., 669;
 
 Alter
 
 v.
 
 Shearwood,
 
 
 *568
 
 114 Ohio St., 560, 151 N. E., 667;
 
 Chester Park Co.
 
 v.
 
 Schulte, Admr.,
 
 120 Ohio St., 273, 166 N. E., 186.
 

 Section 11576, General Code, provides that new trials may be granted for
 
 “4.
 
 Excessive damages, appearing to have been given under the influence of passion or prejudice. ’ ’ In the
 
 Schendel
 
 and
 
 Chester Park Co. cases, supra,
 
 we held that if the trial or reviewing courts found that a verdict was so influenced, their sole duty was, not to enter a remittitur, but to grant a new trial.
 

 Counsel for plaintiff in error contends that if it be conceded that a remittitur may be entered with the consent of the plaintiff, a remittitur amounting to fifty per cent, of a verdict in a tort' action is
 
 ipso facto
 
 unimpeachable evidence that the jury was influenced by passion or prejudice; that the disparity between the amount of the verdict and the amount of the judgment after remittitur is conclusive proof that prejudice tainted the verdict; and that the judgment should be reversed although the entry of the remitting judge or judges does not declare that the verdict was influenced by passion or prejudice. At the threshold of this contention counsel is confronted with the ease of
 
 Chester Park Co.
 
 v.
 
 Schulte,
 
 supra, where this court sustained a judgment resulting from a remittitur of twenty-five per cent, entered by the trial court and an additional remittitur of twenty-five per cent, by the Court of Appeals. Undoubtedly the size of the verdict and the 'amount of remittitur should be one of the elements considered by the courts in determining whether the verdict was influenced by passion or prejudice. A court may consider a verdict to be so excessive as to require a remittitur; but the amount of the verdict, while it may furnish a suspicion of passion or prejudice, is not of itself conclusive proof of that fact.
 
 Arkansas Valley Land & Cattle Co.
 
 v.
 
 Mann, 130
 
 U. S., 69, 9 S. Ct., 458, 32 L. Ed., 854. There the verdict returned was in the sum of $39,958.33. The lower court
 
 *569
 
 announced a new trial would be granted unless tbe plaintiff consented to a remittitur of $22,833.33 from the verdict, to which plaintiff consented. Mr. Justice Harlan, speaking for the court said: “This court is not, however, authorized to assume, from the mere fact that $22,833.33 was remitted, that the court below believed that the jury were governed by prejudice, or wilfully disregarded the evidence.” In
 
 Northern Pac. Rd. Co.
 
 v.
 
 Herbert,
 
 116 U. S., 642, 6 S. Ct., 590, 29 L. Ed., 755, an action in tort, the federal court sustained a judgment in the sum of $10,000 where the verdict was for $25,000, and the remittitur entered was $15,000, being sixty per cent, of the verdict.
 

 .It is difficult to apply a hard and fast rule for ascertaining whether or not verdicts are influenced by passion or prejudice. In order to determine whether an excessive verdict was so influenced, it becomes the duty of a reviewing court to consider not only the amount of damages returned, and the disparity between that amount and the remittitur, where one had been entered, but to ascertain whether the record discloses that the excessive damages returned were induced by (a) admission of incompetent evidence, or (b) by misconduct on the part of the court or counsel, or (c) whether the record discloses any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded.
 

 Let us take a case particularly in point, one decided by this court,
 
 Pavilonis
 
 v.
 
 Valentine,
 
 120 Ohio St., 154, 165 N. E., 730. By a closely divided court it was there held that a prospective juror might be interrogated on his
 
 voir dire,
 
 as to his connection with or interest in a casualty insurance company. Speaking from experience, I have doubts of the
 
 bona fides
 
 of such efforts in most of the cases, believing that they are conducted for the sole purpose of injecting into the case the impression that there was a surety back of the defendant, re
 
 *570
 
 sponsible for any judgment that may be awarded against him. It developed in the
 
 Pavilonis case
 
 that although eighteen prospective jurors were inquired of on their
 
 voir dire
 
 as to- their connection with insurance companies, not one of them answered in the affirmative ; and as stated in my opinion, on page 176 of that case, it furnished “a concrete case showing the unwisdom of such examination, which, while resulting in no cause for challenge to the plaintiff, was extremely damaging to the defendant.” There was no question of remittitur of excess damages in that case. Had there been, as there was in this, I am firmly of the opinion that a reviewing court would be justified in examining the record for the purpose of determining whether a
 
 voir dire
 
 examination, which was ineffectual in furnishing a challenge for cause, had a tendency to enhance the amount, of the verdict. That rule of procedure should be applied in all cases' whether the insured be a vehicle owner, a bank, a contractor, or any other obligee defendant who happens to be protected by a bond. The mode of procedure authorized under the
 
 Pavilonis case
 
 has been adopted by counsel with alarming frequency as shown by the large number of cases that have appeared upon our docket. However much we may disagree as to the competency of such proceeding in determining one’s qualifications as a juror, there can be no valid or legal reason for voluntarily dragging the insurance idea into the case where the door was not opened by the defendant, or where the qualifications of a juror were not involved; and yet frequent efforts are made by counsel attempting to inject the insurance feature during the trial, either by comment or by the examination or cross-examination of witnesses.
 

 The accident happened not in the business or closely built up portion of the city, but in a residential district where a rate of speed of thirty-five miles per hour was
 
 prima facie
 
 lawful. Counsel for the defendant below asked the court to give before argument, a special re
 
 *571
 
 quest, which in substance stated that as a matter of law it was
 
 prima facie
 
 lawful for the operator of a truck to drive the same at a rate of speed not exceeding thirty-five miles per hour at the time and place of the accident. The request was refused. The plaintiff below, neither in his petition nor his testimony, made any claim of the violation of statute because of excessive speed. The petition alleged, not that the operator was violating the speed statute (Section 12603, General Code), but that he was operating the truck “at a speed greater than was reasonable and proper having due regard for the presence of said children and the surface, width and other conditions then and there existing.” When counsel for the defendant therefore sought to limit the jury’s consideration solely to the provisions relating to the
 
 prima facie
 
 speed statute, and to eliminate the gravamen of the negligence relied upon by the plaintiff, that of driving “at a speed greater than was reasonable and proper having due regard,’’.etc., the special request so formulated was one which was calculated to mislead the jury. The trial court in charging the jury, said that there was no evidence of a rate of speed in excess of that permitted by the statute, and confined their consideration to the duty of the operator of the truck to drive it at a rate of speed that was reasonable and proper, having due regard to the traffic, etc., as provided by Section 12603, General Code. It is obvious that the court, under the circumstances, did not err in refusing to give the special request, limited as it was to an issue which was not a subject of controversy.
 

 At the close of the charge counsel for defendant asked the court to say to¡ the jury that if it appeared from the evidence adduced on behalf of the infant plaintiff that his conduct was such as to raise a presumption of negligence on his part, it then devolved upon said plaintiff to counterbalance that presumption by evidence. This request was substantially given
 
 *572
 
 with the consent of counsel for plaintiff. The other side cannot complain. While other claims of error are advanced, we are of opinion that no prejudicial error intervened which would require a reversal of the judgment below.
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Allen, Stephenson and Bevis, JJ., concur.
 

 Zimmerman, J., concurs in the syllabus and in the judgment.