### Greenwood
### v.
### Alcan Aluminum Corp.
*[Cite as 2 AOA 483]*

Case No. 89CA004598
Lorain County, (9th)
Decided April 18, 1990

R.C. 1343.03
R.C. 2307.72

*Daniel A. Cook, Attorney at Law, 209 Sixth St., Lorain, OH 44052 for Plaintiffs.*

*Melinda Hardmand, Attorney at Law, 705 Lorain County Bank Bldg., Elyria, OH 44035 for Plaintiffs.*

*Alfred R. Cowger, JR. and Lawrence A. Salibra, II, Attorneys at Law, 1301 E. Ninth St., Cleveland, OH 44114 for Defendants.*

REECE, J.

The appellees, Kenneth R. Chutes, Jr. (Chutes) and Harry A. Greenwood, Sr., Administrator of the Estate of Harry R. Greenwood, Jr. (Greenwood), brought this action against Rossborough Manufacturing Co. (Rossborough), Hilti, Inc. (Hilti) and Alcan Aluminum Corporation (Alcan). Chutes and Greenwood were severely burned in an explosion which occurred at Rossborough. The complaint was premised on two claims in strict liability and one in negligence.

In 1979, Rossborough entered into an agreement with Hilti to mix and package a powdered compound -- Thermit[1]. Pursuant to this agreement, Hilti provided the mixing formulas, production schedules and shipping instructions. Rossborough provided the mixing facilities and the labor. Rossborough received all of its supplies from Hilti. Hilti ordered aluminum powder from Alcan.

On July 1, 1986, Chutes and Greenwood were working at Rossborough as baggers. Joe Duszih was working as the mixer. As Duszhih was emptying a drum of aluminum powder into the hopper, the drum slipped, causing a spark which ignited the aluminum particles (deflagration). Chutes and Greenwood received second and third degree burns over seventy percent of their bodies. Chutes recovered but sustained scarring over one hundred percent of his body. Greenwood died forty-eight days after the explosion. Chutes and Greenwood alleged that Alcan sent the wrong grade of aluminum powder, Alcan 44 instead of Alcan 11, to Rossborough, which was the cause of the explosion.

Rossborough and Hilti settled with Chutes and Greenwood in the amount of $1,750,000. Alcan proceeded to trial by jury which rendered a verdict of $2,400,000 for Chutes and $1,000,000 for Greenwood. After a remittitur of $1,482 and offsetting the prior settlement, the trial court entered a judgment against Alcan in the amount of $1,648,518. Alcan appeals.

### ASSIGNMENTS OF ERROR

"I. Alcan was entitled to a J.N.O.V. because plaintiffs failed to establish a prima facie case of a defect.

"II. Only improper speculation would have caused the jury to find that Alcan 44 was at the platform at the moment of the explosion.

"IV. Rossborough's misuse of the powder, in contravention of Alcan's warnings, precluded

a finding that Alcan's powder was a proximate cause of the explosion."

Alcan asserts that its motion for judgment notwithstanding the verdict should have been granted because the plaintiffs failed to prove that the defective product, Alcan 44, was the cause of the explosion. Thus, the injury to plaintiffs was not caused by the defect.

"***.

"'The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must de denied. *Neither was weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.'*" (Emphasis added.)

"***." *Osler v. Lorain* (1986), 28 Ohio St. 3d 345, 347, citing *Posin* v. *A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275.

In *Temple* v. *Wean united Inc.* (1977), 50 Ohio St. 2d 317, the Court adopted Section 402A of the Restatement of Law 2d, Torts (1965), as the law of Ohio. Paragraphs one and two of the syllabus in *Temple*, taken from subsections one and two of Section 402A, provide:

"1.     One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a)  the seller is engaged in the business of selling such a product, and

"(b)  it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"2.  The rule stated above applied although the seller has exercised all possible care in the preparation and sale of his product, and the user or consumer has not bought the product from or entered into any contractual relation with the seller."

"***."

The court in *Temple* noted that there were "virtually no distinctions between Ohio's 'implied warranty in tort' theory and the Restatement version of strict liability in tort."

*Id.* at 271. *Temple* presented two alternative phrasings of the test for recovery under the strict liability in tort. The first is whether a product is "of good and merchantable quality, fit and safe for * * * [its] ordinary intended use." *Id.* at 321. The other is the "unreasonably dangerous" test of Section 402A of the Restatement of Torts 2d. *Id.* at paragraph one of the syllabus. See, also, *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456. Thus, in Ohio, a product which is unfit and unsafe for its intended use under an "implied warranty in tort" would also be unreasonably dangerous under a Section 402A theory. *Leichtamer* at 463.

In this case, Alcan 44 was not defective in the usual sense. Alcan 44 was properly made and merchantable but was the wrong chemical for the buyer's particular or reasonably foreseeable use. Thus, it was defective because it was inconsistent with the specifications of Alcan 11, which was purchased to manufacture Thermit.

"***[A] defective condition [in a product at the time it left the control of the manufacturer] may be proved by circumstantial evidence, where such evidence *** [shows] that the accident was caused by a defect and not other possibilities, although it is not necessary in a civil action to eliminate all other possibilities.***." *State Auto Mutual Ins. Co.* v. *Chrysler Corp.* (1973), 36 Ohio St. 2d 151, 156. See, also, *Gast* v. *Sears Roebuck and Co.* (1974), 39 Ohio St. 2d 29 and *Cincinnati Ins. Co.* v. *Volkswagen of America, Inc.* (1985), 29 Ohio App. 3d 58. Alcan asserts that plaintiffs have not established a primafacie case that Alcan 44 was the proximate cause of the deflagration and fire.

Alcan relies upon *State Farm Fire & Casualty Co.* v. *Chrysler Corp.* (1988), 37 Ohio St. 3d 1. In *State Farm*, the plaintiffs presented no expert analysis or other evidence demonstrating that the design of the automobile would or could cause the fire. *Id.* at 8.

In this case there was testimony that Alcan aluminum powder was first used on June 30, 1986, and that prior to that Reynolds 832 aluminum powder was used to make Thermit. On July 1, 1986, aluminum powder with an Alcan label was used in Thermit production. There was evidence in the form of a shipping traveller, a packing list and a report of Donald Woods, an Alcan employee, that Alcan 44 may have been shipped to Rossborough instead of Alcan 11.

The expert testimony elicited at trial revealed the existence, at the site of the explosion, of a finer aluminum powder having the characteristics of alcan 44. The finer powder, on an index of explodability, was 5,000 times more explosive than Alcan 11. Although the expert could not state unequivocally that Alcan 11 did not cause the explosion, he stated that the probable cause of the explosion was the use of the finer powder at the time of the accident. This was based upon the plant being operated without incident for six or seven years and the great difference in the reactivity of the aluminum powders.

Additionally, Alcan asserts that the jury's answers to the interrogatories are inconsistent. In response to the interrogatories, the jury found that Alcan provided adequate warnings of the dangers of aluminum powder. It also found that the actions or inactions of Rossborough or Hilti were not a superseding cause of the injuries to Chutes and Greenwood.

Thus, Alcan was not liable on the failure to warn cause of caution. However, Chutes and Greenwood set forth causes of action in strict liability and negligence. As part of both of those causes of action the plaintiffs must show proximate cause and causation in fact. The jury determined that Alcan 44 was the cause of the explosion and that any action or inaction Rossborough or Hilti was not a superseding cause. Therefore, the jury's answers to the interrogatories were not inconsistent.

Thus, there was substantial evidence to support the plaintiffs' theory. Therefore, the trial court did not err in denying Alcan's motion for judgment notwithstanding the verdict.

The first, second and fourth assignments of error are not well taken.

### ASSIGNMENT OF ERROR III

"Plaintiffs failed to present sufficient evidence to constitute a preponderance of the evidence."

While Alcan raises this assignment of error, it fails to argue the issue in its brief. "Errors not treated in the brief will be regarded a having been abandoned by the party who gave them birth." *Uncapher* v. *Baltimore and Ohio Rd. Co.* (1933), 127 Ohio St. 351, 356. See, also, App R. 12(A); *Hawley* v. *Ritley* (1988), 35 Ohio St. 3d 157, 159; *Wolff Brothers* v. *Weygandt* (Jan. 25, 1989, Summit App. No. 13784, unreported.

Assignment of error three is overruled.

### ASSIGNMENT OF ERROR VI

"The trial court's award of prejudgment interest was without proper foundation and denied Alcan due process by penalizing for exercising its constitutional right.

"A. Alcan fully cooperated in discovery proceedings.

"B. Alcan rationally evaluated its risks and potential liability, and reached an objectively reasonable determination that it was not liable to plaintiffs."

Alcan asserts that it fully cooperated in discovery proceedings and that it rationally evaluated its potential for liability. R.C. 1343.03(C) "requires all parties to make an honest effort to settle a case." *Kalain* v. *Smith* (1986) 25 Ohio St. 3d 157, 159. The statute goes beyond prohibiting acts of bad faith, and requires litigants to diligently strive to effect a settlement. *Id.*

"***.

A party has no 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."

"***." *Id.*

The award of prejudgment interest is within the sound discretion of the trial court. *Id.*; see, also, *Huffman* v. *Hair Surgeon Inc.* (1985), 19 Ohio St. 3d 83

In the present case, the trial court determined that Alcan failed to make a good faith effort to settle this case. This court has declined to place a percentage value on good faith; however, R.C. 1343.03(C) does not require a particular settlement offer when plaintiff has only a fifty percent chance of prevailing. *Ruzendall* v. *Norfolk Southern Corp.* (May 24, 1989), Summit App. No. 13820, unreported.

Alcan's theory of the case, that it did not mistakenly ship Alcan 44 instead of Alcan 11, and that the warnings were adequate, demonstrated that Alcan acted in good faith when it refused to make a higher settlement offer. Thus, this court finds that the trial court abused its discretion when it awarded prejudgment interest to the plaintiffs.

The sixth assignment of error is well taken.

## ASSIGNMENT OF ERROR V

"Alcan was entitled to a new trial because the judgment was not sustained by the weight of the evidence, Alcan was denied the right to a charge of misuse to the jury, and because the damages awarded were clearly excessive, thereby demonstrating that passion and prejudice governed the award of damages.

"A. The judgment was not sustained by the weight of the evidence.

"B. A new trial is warranted because Alcan was denied a jury instruction regarding misuse.

"C. The amount of damages awarded demonstrates passion and prejudice guided the jury verdict."

Alcan asserts three reasons why the trial court erred in not granting it a new trial. In *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82, paragraph one of the syllabus, the Supreme Court of Ohio concluded of Ohio concluded that:

"Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of an abuse of discretion by the trial court."

When determining whether a verdict is against the weight of the evidence, the trial court is deciding a question of fact, a matter within its sound discretion. *Id.* at 92. The trial court, in determining such a question, must review the evidence and pass on the credibility of the witnesses. In so doing, the court must ask itself whether a manifest injustice has been done, whether the verdict is against the manifest weight of the evidence. *Id.*

This court must view the evidence favorably to the trial court's actions. *Jenkins* v. *Krieger* (1981), 67 Ohio St. 2d 314, 320. Greenwood and Chutes presented substantial, competent, credible evidence to support the verdict.

Alcan next asserts that a new trial is warranted because it was denied a jury instruction regarding misuse. If the plaintiff misused the product in an unforeseeable manner, Alcan is provided with a complete defense as to a cause of action in strict liability. There was no evidence presented that the product was used by plaintiffs in an unforeseeable manner.

Finally, Alcan contends that the award of damages was the result of passion or prejudice. The jury announced its general verdict of the award without delineating the damages in response to the sixth and seventh interrogatories. The trial court properly ordered the jury to return to consider its verdict and answers. Civ. R. 49(B).

The following was part of interrogatories six and seven:

"The reasonable cost of necessary medical and hospital expenses incurred***."

The jury's answer to the interrogatories stated that the medical costs incurred by Chutes were $225,000, and by Greenwood, $250,000. The evidence presented at trial supporting medical damages was $221,463.57 for Chutes and $136,467.41 for Greenwood.

If a verdict in an action for damages is, in the opinion of the trial court, excessive, but not appearing to be influenced by passion or prejudice, the court may with the assent of the plaintiff reduce the verdict by remittitur to any amount warranted by the evidence. *Chester Park Co.* v. *Schulte* (1929), 120 Ohio St. 273, paragraph three of the syllabus. This court has the same unlimited power and control of verdict and judgment as the trial court. *Duracote Corp.* v. *Goodyear Tire & Rubber Co.* (1983), 2 Ohio St. 3d 160, 162-163.

The amount is not conclusive of the fact that a verdict was a result of passion or prejudice; however, it may furnish a suspicion that it was. *Fromson & Davis Co.* v. *Reider* (1934), 127 Ohio St. 564, 568. In determining whether a verdict was influenced by passion and prejudice, a reviewing court should consider the amount of damages returned, whether the damages were induced by the admission of incompetent evidence, by misconduct of either the court or counsel, or by any other action occurring during the trial which can reasonably be said to have swayed the jury in their determination of the amount of the award. *Id.* at 569.

Based upon the record, this court finds that the verdict was excessive, but not due to passion or prejudice. Accordingly, assignment of error five is in part well taken.

Based on the foregoing, this court sustains Alcan's sixth assignment error and in part Alcan's fifth assignment of error.

All other errors are overruled.

This court modifies the judgment so as to delete prejudgment interest.

This court remands the matter to the trial court in order to give Chutes the opinion of a new trial or $3,536.43 remittitur, and Greenwood the option of a new trial or $113,532.59 remittitur.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded,*
*as modified.*

CACIOPPO, J.
CIRIGLIANO, J.
Concur

---

[1] Thermit is a compound consisting of aluminum powder, iron oxide and sand. It is used in the steel industry to repair steel ingot molds that have become pitted.