JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant John Crane, Inc. ("appellant") appeals from the jury verdict awarding damages to plaintiff-appellee Jackie Fraysure, executrix of the estate of William Fraysure, deceased, ("appellee"). The appellant in this case is appealing from the final judgment dated February 26, 2003, and the trial court's order denying defendant's motion for new trial and/or judgment notwithstanding the verdict dated May 12, 2003. Having reviewed the arguments of the parties and the pertinent law, we affirm the lower court's decision.
 I {¶ 2} The case sub judice went to trial as a products liability case governed by R.C. 2307.71 through 2307.80. In the case at bar, the decedent William Fraysure worked at Dayton Power and Light Company from approximately 1971 to 1999. Mr. Fraysure was exposed to asbestos and asbestos-containing materials over the course of his employment. The asbestos exposure caused him to develop mesothelioma and become totally disabled. Mr. Fraysure eventually died from the asbestos exposure; however, at the time that the complaint was filed, Mr. Fraysure was only disabled.
 {¶ 3} During the course of his long career with Dayton Power and Light Company, Mr. Fraysure was a station helper, equipment mechanic, planner, and maintenance supervisor. He worked in close proximity to the asbestos and the asbestos-containing materials of the defendants. Mr. Fraysure was exposed to asbestos for almost 30 years, and eventually this long-term exposure to asbestos caused his disability. Mr. Fraysure eventually became totally disabled and sued appellant in this products liability action.
 II {¶ 4} Appellant's first assignment of error states: "The trial court erred as a matter of law in denying defendant's motion for judgment notwithstanding the verdict, because the evidence established that John Crane, Inc.'s products were not a substantial factor in causing Fraysure's mesothelioma, and defendant is entitled to a verdict in its favor."
 {¶ 5} The applicable standard of review to appellate challenges to the overruling of motions for judgment notwithstanding the verdict is identical to that applicable to motions for a directed verdict. Posin v.ABC Motor Court Hotel (1976), 45 Ohio St.2d 271. A motion for judgment notwithstanding the verdict should be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Posin, supra at 275. "Conversely, the motion should be granted where the evidence is legally insufficient to support the verdict." Id.
 {¶ 6} For each defendant in a multi-defendant asbestos case, the plaintiff has the burden of proving exposure to the defendant's product and that the product was a substantial factor in causing the plaintiff's injury. A plaintiff need not prove that he was exposed to a specific product on a regular basis over some extended period of time in close proximity to where the plaintiff actually worked in order to prove thatthe product was a substantial factor in causing his injury. Horton v.Harwick Chem. Corp. (1995), 73 Ohio St.3d 679.
 {¶ 7} The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than the so-called philosophical sense, which includes every one of the great number of events without which any happening would not have occurred. Id.
 {¶ 8} We find that the judgment in this case is supported by substantial, competent, and credible evidence. As previously stated, in order for appellee to recover in this case, he must prove that appellant's product was a substantial factor in causing his injury. There are numerous factors supporting the trial court's decision in the case sub judice. For example: (1) Mr. Fraysure's co-worker, William Rogers, identified the product as John Crane's 187-I valve packing; (2) appellant stipulates that this product is made up of 52 percent (by weight) chrysotile asbestos; (3) the product never had a warning label on it in the years at issue; (4) Mr. Fraysure used the product extensively throughout the 1970s; (5) the work on a single valve could take up to eight hours or more; (6) Mr. Fraysure worked without a mask or other protection; (7) appellee's expert, Richard Hatfield, conducted an experiment which was fairly representative of how the John Crane product was used by Mr. Fraysure and the experiment produced asbestos dust in concentrations exceeding OSHA standards by 300%; (8) expert Dr. Richard Lemen testified that chrysotile asbestos was an established cause of mesothelioma; and (9) expert Dr. Steven Dikman, M.D., also stated that, in his opinion, Mr. Fraysure's exposure to John Crane packing was a significant contributing cause to his mesothelioma. In addition, the parties stipulated at the start of trial that William Fraysure suffered and died from a malignant mesothelioma and his mesothelioma was caused by occupational exposure to asbestos-containing products.[1]
 {¶ 9} Based on the weight of the evidence above, we find substantial, competent, and credible evidence supporting the trial court's verdict. Furthermore, we find that the evidence establishes that appellant's products were a substantial factor in causing Fraysure's mesothelioma, and plaintiff was entitled to a verdict in his favor.
 {¶ 10} Appellant's first assignment of error is overruled.
 III {¶ 11} Appellant's second assignment of error states: "Alternatively, the trial court prejudicially erred in denying defendant's motion for a new trial." Appellant's third assignment of error states: "Alternatively, the trial court erred prejudicially in failing to grant a remittitur of the excessive phase I jury verdict, and this court should remit the verdict." Due to the interrelation of appellant's second and third assignments of error and in the interests of judicial economy, we shall address appellant's second and third errors together.
 {¶ 12} A new trial based on the weight of the evidence is not warranted where the judgment is supported by substantial, competent, and credible evidence. Koler v. Leff, Cuyahoga App. No. 66073. In reviewing a trial court's ruling on a motion for a new trial, an appellate court should view the evidence before it favorably to the trial court's action, rather than the jury's verdict, where the trial court's decision involves questions of fact. Star Bank, N.A. v. Cirrocumulus LimitedPartnership, 121 Ohio App.3d 731.
 {¶ 13} The trial court's actions in this case were favorable. Appellant argues that the presentation of plaintiff's case in a reverse bifurcation format prevented appellant from receiving a fair trial. We find this not to be the case. The trial court is free to order separate trials of separate issues whenever it will further convenience, avoid prejudice, or be conductive to expedition and economy. A trial court is in the best position to ascertain whether a bifurcation of the issues is necessary and that court, therefore, has broad discretion in doing so.Fairfield Commons Condominium Asso. v. Stasa (1985), 30 Ohio App.3d 11.
 {¶ 14} The decision of whether or not to bifurcate the proceedings * * * is a matter within the sound discretion of the trial court. Sheetsv. Norfolk S. Corp. (1996), 109 Ohio App.3d 278, 288, citing Heidbrederv. Trustees (1979), 64 Ohio App.2d 95, 100. We will not disturb the trial court's decision to bifurcate the trial, pursuant to Civ.R. 42(B), absent an abuse of discretion. Clark v. Univ. Hosps. of Cleveland (1997), Cuyahoga App. No. 78854. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or capricious. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 15} The high abuse of discretion standard defers to the trial court order because the trial court's ruling may require an evaluation of witness credibility which is not apparent from the trial transcript and record. Schlundt v. Wank (1997), Cuyahoga App. Case No. 70978. Therefore, so long as the evidence is supported by substantial, competent, credible evidence, the jury verdict is presumed to be correct and the trial court must refrain from granting a new trial. Id.
 {¶ 16} Ohio Civ.R. 42(B) provides that a court may order separate trials of issues whenever it will further convenience, avoid prejudice, or be conductive to expedition and economy.
 {¶ 17} Ohio Civ.R. 42(B) states the following:
"(B) Separate trials. The court, after a hearing, in furtherance ofconvenience or to avoid prejudice, or when separate trials will beconducive to expedition and economy, may order a separate trial of anyclaim, cross-claim, counterclaim, or third-party claim, or of anyseparate issue or of any number of claims, cross-claims, counterclaims,or third-party claims, or issues, always preserving inviolate the rightto trial by jury." (Emphasis added.)
 {¶ 18} We find that the inherent complexities involved in asbestos litigation coupled with the trial court's desire to expedite the trial more than justified its decision to implement a reverse bifurcation format. We find that the trial court acted properly in exercising its right to bifurcate the trial.
 {¶ 19} In addition to the trial court's well established right to bifurcate the trial, the doctrine of joint and several liability supports the trial court's verdict. The doctrine of joint and several liability among tortfeasors has long been a part of the common law of Ohio. The general rule is, that where damage is caused by the joint or concurrent wrongful acts of two or more persons, they may be prosecuted therefore jointly or severally. Bowling v. Heil Co. (1987), 31 Ohio St.3d 277.
 {¶ 20} Unlike a negligence case, in a products liability case if the defendant's actions significantly contribute to cause harm, then the defendant is responsible for the full extent of the harm and the plaintiff may enforce the verdict against all entities or against only one.[2] Accordingly, we find that the trial court's verdict regarding the apportionment of damages was proper and not excessive.
 {¶ 21} Appellant's second assignment of error is overruled.
 {¶ 22} In addition to the above argument, appellant argues that the trial court erred in failing to grant a remittitur of the phase I jury verdict and should remit the verdict. After reviewing the evidence, we do not find this to be the case. The court of appeals has the same unlimited power and control of verdicts and judgments as the trial court and may weigh the evidence and exercise an independent judgment upon questions of excessive damages, and when no passion or prejudice is apparent, may modify and affirm the judgment by ordering a remittitur with the consent of the prevailing party. Duracote Corp. v. Goodyear Tire RubberCo. (1983), 2 Ohio St.3d 160.
 {¶ 23} Unless there is some episode in the trial, such as language of the trial court in its charge to the jury deliberately calculated to engender sympathy, or some other event such as highly improper argument by counsel tending to inflame a jury, the question whether a verdict is given under the influence of passion and prejudice or whether it is merely excessive and can be cured by remittitur is largely left to the discretion of the trial court. Larrissey v. Norwalk Truck Lines, Inc.
(1951), 155 Ohio St. 207.
 {¶ 24} The courts have been loathe to infringe upon the jury's province as fact finder when assessing damages. This is why Civ.R. 59(A)(4) speaks not in terms of excessive damages per se, but excessive damages brought about by passion or prejudice. To permit the courts toorder a remittitur simply because the court did not agree with the amountof the jury's award would be a usurpation of the jury's function as thefact finder. A remittitur can only be ordered if the amount of damageswas tainted in a legal sense, hence the requirement that there be aprecipitating error — the passion or prejudice — that inducedthe improper damage award and thus rendered the trial unfair. Mullett v.Wheeling Lake Erie Ry. Co., Cuyahoga App. No. 81688, 2003-Ohio-3347.
 {¶ 25} In Fromson Davis Co. v. Reider (1934), 127 Ohio St. 564, the third paragraph of the syllabus states:
"In order to determine whether excessive damages were so influenced [bypassion or prejudice], a reviewing court should consider, not only theamount of damages returned and the disparity between the verdict andremittitur where one has been entered, but it also becomes the duty ofsuch court to ascertain whether the record discloses that the excessivedamages were induced by (a) admission of incompetent evidence, (b) bymisconduct on the part of the court or counsel, or (c) by any otheraction occurring during the course of the trial which can reasonably besaid to have swayed the jury in their determination of the amount ofdamages that should be awarded."
 {¶ 26} Appellant's argument for remittitur was based on the size of the damage award, without reference to facts showing that passion or prejudice played a part in the size of the award. Furthermore, appellant did not allege that appellee engaged in misconduct, so that factor cannot apply, and we cannot find any other action occurring during trial which could be said to have reasonably swayed the jury. Therefore, with the absence of any specific facts showing why the award was the product of passion and prejudice, we cannot say that the court abused its discretion by denying appellant's request for remittitur.
 {¶ 27} In addition, at the conclusion of the trial court's instructions, appellant's counsel had no further suggestions or objections to the instructions given. The jury's award was based on credible evidence and expert testimony. The jury was free to believe the testimony and we cannot say that it was unsupported by the evidence. We find that nothing in the record indicates that the excessive damages were induced by an admission of incompetent evidence, misconduct on the part of the court or counsel, or by any other action occurring during the course of the trial which can reasonably be said to have swayed the jury in their determination of the amount of damages that should be awarded.
 {¶ 28} Appellant's second and third assignments of error are overruled.
 IV {¶ 29} Appellant's fourth assignment of error states: "The trial court abused its discretion in awarding prejudgment interest to the plaintiff where this defendant has a good faith, objective belief that it was not liable."
 {¶ 30} A party has not failed to make a good faith effort to settle under R.C. 1343.03(C) if he has: (1) fully cooperated in discovery proceedings; (2) rationally evaluated his risks and potential liability; (3) not attempted to unnecessarily delay any of the proceedings; and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer. Kalain v. Smith (1986), 25 Ohio St.3d 157. The decision as to whether a party's settlement efforts indicate good faith isgenerally within the sound discretion of the trial court. The court willnot overturn a finding on this issue unless the trial court's actionsindicate an abuse of discretion. Id.
 {¶ 31} An award of prejudgment interest is within the sound discretion of a trial court. The term "abuse of discretion" connotes more than an error of law or of judgment. It implies that a court's attitude is unreasonable, arbitrary or unconscionable. The term "discretion" itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an"abuse" in reaching such determination, the result must be so palpablyand grossly violative of fact and logic that it evidences not theexercise of will but perversity of will, not the exercise of judgment butdefiance thereof, not the exercise of reason but rather of passion orbias. Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83.
 {¶ 32} R.C. 1343.03, Interest When Rate Not Stipulated, covers prejudgment interest. R.C. 1343.03(C) states the following:
"(C) Interest on a judgment, decree, or order for the payment of moneyrendered in a civil action based on tortious conduct and not settled byagreement of the parties, shall be computed from the date the cause ofaction accrued to the date on which the money is paid if, upon motion ofany party to the action, the court determines at a hearing heldsubsequent to the verdict or decision in the action that the partyrequired to pay the money failed to make a good faith effort to settlethe case and that the party to whom the money is to be paid did not failto make a good faith effort to settle the case." (Emphasis added.)
 {¶ 33} It is with the above standards in mind that we address the case in question. There are several factors supporting the trial court's verdict. For example, appellant has a history of not settling cases before trial.[3] In fact, before the phase I trial and during the interim before phase II, appellant refused to discuss settlement. Appellee offered to lower her $2.3 million verdict from phase I and open negotiations with a demand of $750,000; however, appellant did not negotiate.[4] Appellant was unwilling to settle before trial and is now unhappy with the verdict; unfortunately, appellant's practice of not settling cases before trial turned out to be unfavorable to the appellant.
 {¶ 34} More than appellant's inability to make a good faith monetary settlement offer or respond in good faith to an offer from appellee, appellant's real failure was its inability to rationally evaluate its risks and potential liability. Appellant failed to successfully evaluate its risks and potential liability when it refused to negotiate prior to trial. Appellant failed to engage in a good faith settlement, as required under R.C. 1343.03(C), and the case law above.
 {¶ 35} Accordingly, we do not find an abuse of discretion on the part of the trial court in its prejudgment interest award to appellee and we affirm the decision of the trial court.
 {¶ 36} Appellant's fourth assignment of error is overruled.
 {¶ 37} The judgment is affirmed.
Judgment affirmed.
Patricia A. Blackmon, P.J., and Frank D. Celebrezze, Jr., J., concur.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] See transcript of proceedings phase two, volume I, page 255. In the transcript, the trial judge referred to the stipulations and stated: "The other stipulation I have here, `and the following facts are stipulated by both parties in the present action, number one, that William Fraysure suffered and died from a malignant mesothelioma, and, two, William Fraysure's mesothelioma was caused by occupational exposure to asbestos-containing products.' Is that a fair stipulation? Mr. Sweeney: That's the stipulation. Mr. Palik: Yes, Your Honor."
[2] See transcript of proceedings, phase two, volume IV, pages 1040-41. In the transcript, the trial judge is referring to the law and states: "If William Fraysure's mesothelioma and death were caused by the acts or omissions of two or more manufacturers of asbestos products who acted independently, and their acts combined to proximately cause his injury and death, each of the wrongdoers is liable to the plaintiff. Theplaintiff may enforce this claim in an action against all entities whocontributed to the harm jointly, or enforce the claims against any one ofthem individually." (Emphasis added.)
[3] See transcript of proceedings phase two, volume IV, page 1091-1093. "The Court: From my experience. And I think you mentioned that or somebody else mentioned it, that nationally the posture is not to settle for the reasons that you annunciated [sic] here. Mr. Palik: My answer to that is this: We have in the past analyzed ever single case that we are involved in * * * So in answer to your question yes it is myunderstanding that John Crane has never settled a case, that I am awareof prior to trial. * * *." (Emphasis added.)
[4] See transcript of proceedings phase two, volume IV, page 1100, where Mr. Sweeney stated: "The last point I want to get on the record, Judge, the plaintiff the day of trial and at pre-trials before, that we were willing to settle the day of trial, we put a dollar value to try to promote a discussion. I want to indicate on the record, again before the jury was called the plaintiff said to the defendant we were willing to start at $750,000 offer of the 2.3 million dollar jury verdict, if they were to enter into negotiations with us in order to avoid the risks and expense of trial. They never came back that day or any other day throughout the trial. So on the record I want to indicate the plaintiff's views, they did everything possible on their part to try to promote a good faith settlement."